STATE OF ARKANSAS ON RELATION OF THE ATTORNEY

GENERAL *v.* TRULOCK.

RAMSEY *v.* FARMER.

Opinion delivered October 27, 1913.

1. STATUTES—RULES OF INTERPRETATION.—The cardinal rule for the interpretation of statutes is the ascertainment of the meaning of the language used in the statute, and not what the lawmakers themselves meant. (Page 563.)

2. STATUTES—AMENDATORY STATUTES—INTERPRETATION.—Where a statute amends an existing statute, "to read as follows," and a literal construction of the amendatory statute would result in the abrogation of the whole law on the subject, but when other parts of the amendatory statute show the intention of the Legislature not to abrogate the whole law, the court will give effect to the evident intent of the lawmakers, in its construction of the statute. (Page 563.)

3. STATUTES—CONSTRUCTION—AMENDMENTS—LEGISLATIVE INTENT.—The intention expressed in a statute prevails over the letter, and the mere literal construction of a section will not be permitted to prevail if it is opposed to the intention of the Legislature made apparent by the statute. (Page 565.)

4. STATUTES—AMENDATORY SECTIONS—CONSTRUCTION.—The words, "be amended to read as follows," in an amendatory statute, constitute a mere formula, except that it ordinarily carries the meaning, when not otherwise limited, that the amendatory statute excludes all omitted provisions of the former law. (Page 565.)

5. STATUTES—REPEALING OR AMENDATORY WORDS.—Amendatory or repealing words of a statute are subject to the same rules of construction as any other parts of the statute, and the literal meaning may be put aside in order to carry out the obvious intention of the lawmakers as otherwise indicated. (Page 566.)

6. IMPROVEMENT DISTRICTS—STATUTES—AMENDMENTS.—Act 125, page 527, Acts of 1913, provided: "That section 5667 of Kirby's Digest be amended to read as follows * * *." The act amended provided for the appointment of commissioners while the amendatory act omitted any reference to the appointment of commissioners. *Held*, the Legislature did not intend to amend the whole of section 5667 of Kirby's Digest, but left unimpaired that part of it

which covered the subject of the commissioners which was not treated in the new statute. (Page 566.)

7. IMPROVEMENT DISTRICTS—STATUTE—AMENDMENT.—Article 5, § 22, of the Const. of 1874, which provides that no law shall be amended or revived by reference to its title only, is not violated by construing Act 125, Acts of 1913, as having in effect left unchanged section 5667 of Kirby's Digest relative to the appointment of commissioners for improvement districts. (Page 567.)

8. IMPROVEMENT DISTRICTS—CONTIGUOUS TERRITORY.—The cutting in two of an improvement district by an intersecting district for the paving of a single street, does not necessarily separate the parts so widely that it can be declared, as a matter of law, that the whole of the territory affected is not contiguous to the improvement within the meaning of the law. (Page 568.)

9. IMPROVEMENT DISTRICTS—DIFFERENT CLASSES OF PROPERTY.—Where a street reaches through different classes of property, business houses and residences, it can not be said that the two kinds of property can not be classed together and put into one improvement district. (Page 568.)

Appeal from Jefferson Circuit Court; *Antonio B. Grace*, Judge; affirmed.

Appeal from Pulaski Chancery Court; *John E. Martineau*, Chancellor; affirmed.

*Wm. L. Moose*, Attorney General, and *A. R. Cooper*, for appellant.

Section 1 of the act of March 3, 1913, not only operates as a repeal of that part of section 5667, Kirby's Digest, providing for the appointment of the board of improvement districts by the city council, but also as a repeal of the entire section.

Generally speaking, where a statute is amended ''so as to read as follows,'' the amendatory act becomes a substitute for the original, which then ceases to have the force and effect of an independent enactment. This does not mean, however, that the original is abrogated for all purposes, or that everything in the later statute is to be regarded as if first enacted therein; but the better and prevailing rule is that so much of the original as is repeated in the later statute without substantial change is affirmed and continued in force; that so much as is omitted is repealed, and that any substantial change in

other portions of the original act, as also any matter which is entirely new, is operative as new legislation. 75 N. W. (Minn.) 717; 92 N. W. (N. D.) 449, 450; 18 L. R. A. 713; 155 Fed. 945; 34 Atl. (Pa.) 954; 1 Sutherland, Stat. Const. 442; 49 N. Y. 332; 84 N. Y. 610; 15 N. Y. 595; 63 Cal. 261.

*Danaher & Danaher* and *Rose, Hemingway, Cantrell & Loughborough,* for appellee; *Thomas & Lee, Gordon Frierson, Ira D. Oglesby, James P. Clarke, C. W. McKay* and *Wm. H. Arnold* and *Gustavus G. Pope* filed separate briefs as *amici curiae.*

Article 5, section 22, of the Constitution, has reference to the substance of the law, and does not deal with sections as divided in the statutes. It does not say that no section of the statute shall be amended unless the whole section is set out at length, but only that the law shall not be amended unless the *amendment* is so set out.

Kirby's Digest, section 5667, deals with two matters, first, the presentation of the petition by a majority of the property owners, and, second, the appointment of commissioners by the city council. The act of 1913 deals only with the first of these subjects, makes no change therein by reference, but sets out fully, as required by the Constitution, the law as amended.

It was plainly not the intention of the Legislature to repeal that portion of the statute giving power to the city council to appoint commissioners. To do so would be to nullify the act, whereas the statute in question was passed expressly to facilitate the operations of such improvement districts. As further evidence that the Legislature did not intend to repeal this part of the statute, every clause, almost, of the act refers to the commissioners. See sections 2, 6, 8, of the act.

In construing legislative enactments, the object of the courts is to ascertain the intention, the purpose, of the law-makers. All rules of construction are directed to this end, and whenever the purpose is plain, the language, however inapt, must be moulded to accomplish the desired result. 34 Ark. 263-269; 35 Ark. 56-59; 58

Ark. 113-116; 60 Ark. 343-348; 37 Ark. 491-494; 94 Ark. 423-426; 100 Ark. 175-178; 153 S. W. (Ark.) 821, 822. The foregoing cases give emphasis to the principle that when the intention of the Legislature is apparent, it is to be given effect, however careless it may have been in the use of language. See also, in support of our contention, 44 N. E. 779, 780; 150 N. Y. 200; 50 Pac. 522, 523, 525; Lewis Sutherland, Stat. Const., § 236.

The power of the city council to appoint commissioners is necessarily implied from the other sections of the statute, and this is a conclusive answer to appellant's contention that it has no such power. The whole scheme of municipal improvement is based upon the appointment of commissioners, and other sections of the statute provide for their activity. See section 5670, as amended by Act 81, Acts 1909, and 48 Ark. 82; 60 Ark. 356; 78 Ark. 453.

*J. W. & J. W. House, Jr.,* for appellant.

1. In addition to the authorities cited by appellant in *State ex rel.* v. *Trulock,* we refer also to the following on the effect of the use of the words "amended to read as follows." 107 Pac. 980, 981; 105 Pac. 994; 86 N. E. 1042; 97 S. W. (Ark.) 662-664.

In view of the authorities cited and referred to, the act of March 3, 1913, unquestionably repealed that part of section 5667, Kirby's Digest, relating to the appointment of commissioners. "The effect of an amendment," says this court, "is to so change the former act as to make it read in the same manner it would have read, and to give it the same effect it would have had, if it had been originally enacted as amended." 91 Ark. 243; 100 Ark. 175; 55 Ark. 389; 73 Ark. 600; 89 Ark. 598.

The cases relied on by appellees in the case of *State ex rel.* v. *Trulock,* refer to the interpretation of a statute on account of some ambiguity; but in none of them does the court go so far as to supply that part of an enactment which goes to the whole substance of the statute. It is not within the province of the courts to legislate, to make a law, but only to declare it, and to supply the

defect in this statute would be legislation. Neither do courts "sit to supervise legislation and keep it within the bounds of propriety and common sense." 72 Ark. 195-201; 11 Ia. 367, 368; 27 Me. 285; 1 Bland, 46; 65 Pac. 563-565; 47 N. W. 923-925; 106 N. W. 451; 138 N. Y. Sup. 975-981; 149 S. W. (Ark.) 656-661; 36 Cyc. 1112-13; Endlich on Interpretation of Statutes, § 22; 117 U. S. 567; 29 Law Ed. 940. Regardless of any expression of its intent by the Legislature, without a positive declaration of intention to repeal section 5667, the provision with reference to the commissioners would be repealed by implication. 92 Ark. 600; 82 Ark. 302; 96 Ark. 92-98. And this leaves the city council with no implied power to appoint commissioners, since all its powers must be derived from Legislative enactment. 86 Ark. 1-11.

2. Before an improvement district can be created under our statute, the improvements must constitute an entirety. It is both unjust and unreasonable that property in a business district should be improved by assessments made on property far removed from the business center, as is the case here. 109 Pac. 610-11-12.

*Rose, Hemingway, Cantrell & Loughborough,* for appellees.

1. The court is not called upon to legislate. The only question is whether or not the Legislature *intended to repeal* the section with reference to the appointment of commissioners, and to arrive at this intention by construing the act of 1913 in the light of *all of its provisions.*

2. The territory is contiguous within the meaning of the law. The power of a city council to lay off improvement districts according to its own discretion has always been upheld by this court; and its action in "including property in an improvement district is conclusive of the fact that it is adjoining the locality to be affected, except when attacked for fraud or demonstrable mistake." 52 Ark. 112; 59 Ark. 305; 70 Ark. 465; 98 Ark. 544; 101 Ark. 227; 54 Ark. 321-325.

McCULLOCH, C. J. In each of these cases an attack is made on the validity of an improvement district, one

in the city of Pine Bluff, and the other in the city of Argenta, Arkansas, organized pursuant to the general statutes of this State. The point of attack in each case is that the General Assembly of 1913 enacted a statute purporting to amend the general statutes on the subject of organization of improvement districts in cities and towns, but which omitted any provision for the appointment of commissioners, and that the effect of that omission was to render the whole of the law on that subject inoperative.

The original statute relating to the appointment of commissioners by the city council reads as follows:

"If within three months after the publication of any such ordinance a majority in value of the owners of real property within such district adjoining the locality to be affected, shall present to the council a petition praying that such improvement be made, which petition shall designate the nature of the improvements to be undertaken, and that the cost thereof be assessed and charged upon the real property situated within such district or districts, the city council shall at once appoint three persons, owners of real property therein, who shall compose a board of improvement for the district." Kirby's Digest, § 5667.

The amendatory statute was approved and went into effect March 3, 1913, and the title thereof is "An Act to amend the statutes in reference to improvement districts in cities and towns." Act No. 125, page 527, Acts 1913. The first section reads as follows:

"That section 5667 of Kirby's Digest be amended to read as follows:

"If within three months after the publication of any such ordinance, persons claiming to be a majority in value of the owners of real property within such district adjoining the locality to be affected shall present to the council a petition praying that such improvement be made, which petition shall designate the nature of the improvements to be undertaken, and that the cost thereof be assessed and charged upon the real property situated

within such district, the city clerk or town recorder, by order of the city or town council, shall give notice by publication once a week for two weeks, in some newspaper published in the county in which such city or town may lie, advising the property owners within the district that on a day therein named, the council will hear the petition and determine whether those signing the same constitute a majority in value of such owners of real property. At the meeting named in the notice, the owners of real property within such district shall be heard before the council, which shall determine whether the signers of said petition constitute a majority in value, and the finding of the council shall be conclusive, unless within thirty days thereafter suit is brought to review its action in the chancery court of the county where such city or town lies. In determining whether those signing the petition constitute a majority in value of the owners of real property within the district, the council and the chancery court shall be guided by the record of deeds in the office of the recorder of the county, and shall not consider any unrecorded instrument.''

Other sections of the amendatory statute make further changes in the law by adding new provisions and changing others.

An analysis of section 5667, as it stood before the amendatory statute was passed, reveals three separate points covered by it, namely, (1) a specification of the time within which the petition may be filed; (2) the requirement as to contents of the petition, and (3) the authority for the appointment by the city council of the board of commissioners and the specification of their qualifications.

The section, as amended by the last statute, omits any reference to the appointment of commissioners, and the contention is that this operated as a repeal of the old section without providing any method for making such appointment. Learned counsel for the appellants rely upon the well settled rule of construction announced by so many of the courts and text writers that, ''when a

statute amends a former statute 'so as to read as follows,' it operates as a repeal, by implication, of inconsistent provisions in the former law, and of provisions omitted in the amended law." In re *Prime,* 136 N. Y. 347, 18 L. R. A. 713.

The authorities in support of that rule are so numerous that it is unnecessary to cite them. The rule is clearly recognized by decisions of this court. *Mondschein* v. *State,* 55 Ark. 389; *Rennau* v. *State,* 72 Ark. 445; *Henderson* v. *Dearing,* 89 Ark. 600; *Edland* v. *State,* 91 Ark. 243.

But that rule of interpretation is not an absolute or an inflexible one, and is not always arbitrarily applied. It must be considered with other rules equally well settled, and must yield place to others which may, under the language of a statute, be more appropriately and accurately employed. The cardinal rule of interpretation is the ascertainment of the meaning of the law-makers as expressed in the language which they have used. Not what the law-makers themselves meant, but what the language they used means. And all rules of interpretation must yield to this as the paramount one.

"The intent of a statute being the law," said Mr. Sutherland, "it necessarily follows that the object of all interpretation is to find out that intent." 2 Lewis' Sutherland on Statutory Construction, § 364.

In reaching the goal, we adopt any of the rules of construction which are found appropriate.

An examination of the amendatory statute discloses an irreconcilable conflict between the language thereof, when literally interpreted, and other parts of the same statutes as well as other parts of the old act which there appears no intention to amend or repeal. The language of the amendatory statute is that the section named above "be amended to read as follows;" but, as before stated, it omits any reference to the appointment of commissioners, and if a literal meaning be given to the words used, the result is that the whole law on the subject of improvement districts is abrogated. This the law-makers

did not intend. The new act clearly contemplates the continued existence of a complete statutory scheme for organizing and carrying out the purposes of improvement districts, for we find in later sections of the amendatory statute references to the commissioners and their duties, and also find many untouched provisions of the old statute which contain references to the duties of the commissioners. For instance, there is a section which specifies when the commissioners shall take the oath of office, and what the oath shall contain; another section contains a provision for filling vacancies, and another provides what shall constitute a quorum of the board for the transaction of business. Numerous other sections specify duties to be performed in carrying out the purposes of the organization of the district.

Now, the title of the act shows that the purpose of the law-makers was not to repeal the statute on the subject of improvement districts, but to amend the same, and if we give literal meaning to the words, we reach a result which the law-makers, not only are not presumed to have intended, but which the language they used shows affirmatively that they did not intend. Therefore, to adopt that construction would be to defeat the expressed will of the law-makers and work out an absurd result in the repeal of the law on this important subject.

Right here we find application for a principle which is nowhere more clearly expressed than by this court in the case of *State* v. *Smith,* 40 Ark. 431, as follows:

"It is the duty of every court, when satisfied of the intention of the Legislature, clearly expressed in a constitutional enactment, to give effect to that intention, and not to defeat it by adhering too rigidly to the mere letter of the statute, or to technical rules of construction. And any construction should be discarded that would lead to absurd consequences."

We announced the same principle in the recent case of *Hodges* v. *Dawdy,* 104 Ark. 583, where we said, in speaking of a certain meaning contended for in construing the language of an enactment, that "such a construc-

tion leads to an absurdity and must be rejected for that reason.''

This court in quite a number of recent cases has said that, in ascertaining the true legislative intent and ''in order to conform to the legislative intent, errors in an act may be corrected or words rejected and others substituted.'' *Garland Power & Development Co.* v. *State Board of Railroad Incorporation,* 94 Ark. 422; *Pryor* v. *Murphy,* 80 Ark. 150; *Bowman* v. *State,* 93 Ark. 168; *Hughes* v. *Kelley,* 95 Ark. 327; *Williams* v. *State,* 99 Ark. 149; *State* v. *Handlin,* 100 Ark. 175; *Snowden* v. *Thompson,* 106 Ark. 517.

Mr. Sutherland states that rule as follows: ''The mere literal construction of a section in a statute ought not to prevail if it is opposed to the intention of the Legislature apparent by the statutes; and if the words are sufficiently flexible to admit of some other construction, it is to be adopted to effectuate that intention. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.'' 2 Lewis' Sutherland, Statutory Construction, § 376.

The words, ''be amended to read as follows,'' constitute a mere formula, in which there is no magic, except that it ordinarily carries the meaning, when not otherwise limited, that the amendatory statute excludes all omitted provisions of the former law.

The rule of interpretation that those words ordinarily operate as a repeal of inconsistent and omitted provisions is nowhere more clearly recognized than by the Court of Appeals of New York, in numerous cases in which it has been announced, but that court, while thoroughly recognizing its force, says that it is not an absolute and inflexible one. In the case of *Bank of the Metropolis* v. *Faber,* 150 N. Y. 200, after reiterating the rule announced in the *Prime* case, *supra,* that court said:

''The effect upon a prior statute of a subsequent amendment, 'so as to read as follows,' is not to be determined in all cases by any fixed and absolute rule, but frequently becomes a question of legislative intent to be de-

termined from the nature and language of the amendment, from other acts passed at or about the same time, and from all the circumstances of the case. The duty of the courts is to give effect to the legislative intent rather than the literal terms of the act." Pursuing the subject further, the court said:

"It is scarcely possible to conceive that the Legislature actually intended, by the amendment, to displace section 30 of the original law from its place as a part of the revised system of statute law, and substitute the amendment in its place. That conclusion must be reached, if at all, not from the circumstances or inherent probabilities of the case, but by the application of some arbitrary rule as to the legal effect of amendments in that form. That rule is not so absolute and unqualified as not to be made to yield to a contrary intention when it is to be found in the nature of the case, in the language employed, and in the course of contemporaneous legislation on the same subject."

Amendatory or repealing words of a statute are subject to the same rules of construction as any other parts of the statute, and the literal meaning may be put aside in order to carry out the obvious intention of the lawmakers as otherwise indicated.

"A repealing clause is subject to construction, the same as any other provision of a statute," said the Supreme Court of Indiana in *Indianapolis Union Ry. Co.* v. *Waddington,* 82 N. E. 1030, "and even an express declaration of a repeal will not be given that effect when it is apparent that the Legislature did not so intend."

"An absolute repeal may be construed as a qualified or partial repeal, where other parts of the statute show such to have been the real intent." 1 Lewis' Sutherland on Statutory Construction, § 293.

It is obvious, from a consideration of the whole of the amendatory statute, that the Legislature did not intend to amend the whole of the section named, but left unimpaired that part of it which covered a subject not treated in the new statute, namely, the third and last

clause of the section which related to the appointment of commissioners and prescribing their qualifications.

We are called upon to decide between an amendment of the whole section, which accords with the liberal meaning of the words used, though it defeats the real meaning as otherwise clearly expressed, and a partial amendment, which the whole of the statute clearly indicates that the law-makers intended. We feel impelled, by the paramount rule of construction, that is, the one which demands the ascertainment of the real intention of the Legislature, to adopt the latter construction, and say that only a partial amendment was intended, and that the provision with reference to the appointment of commissioners is left unimpaired.

It is earnestly insisted by counsel that this construction puts the statute in conflict with the clause of our Constitution which provides that "no law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only; but so much thereof as is revived, amended, extended or conferred shall be re-enacted and published at length." Article 5, section 22, Constitution 1874.

.We can not agree with counsel in this contention. No part of the old statute is "revived, amended, or the provisions thereof extended or conferred by reference to the title only." In fact, under the construction we place upon it, no part of the old section is revived or extended, but the part which is the subject of this controversy is, as we have already explained, left unamended. It is untouched by the amendatory statute, which is, as we have already said, only partial in its operation.

The purpose of the constitutional provision was, as its language clearly implies, merely to prohibit the revival, amendment, or extension of laws merely by reference to title, and has no application to the interpretation of its language in determining whether it operated as an amendment of the old section in its entirety or merely as a partial amendment.

Our conclusion is that that part of section 5667, having reference to the appointment of the commissioners by the city council, has not been repealed, but remains a part of the statute.

In the case of *Ramsey* v. *Farmer,* there is another point raised against the validity of two improvement districts on the ground that they embrace noncontiguous territory. They are street improvement districts, and it is shown that the streets to be improved cross a certain intersecting street which has already been paved, and constitutes a separate improvement district, and it is contended that this breaks the contiguity of the district, and separates it into two parts, which it is contended can not be legally done.

It does not appear that the property embraced in the old district through which the other street was paved is, on account of the paving of the intersecting street, freed from benefits to be derived from the improvement sought through the new districts. For that reason, if for no other, it can not be said that the new districts are broken up, or that the parts are separated. But even if it was otherwise, the cutting in two of the districts by an intersecting district for the paving of a single street does not necessarily separate the parts so widely that it can be declared, as a matter of law, that the whole of the territory affected is not contiguous to the improvement within the meaning of the law on the subject.

Nor can it be said, because the street reaches through different classes of property, business houses and residences, that the two kinds of property can not be classed together and put into one district. The mere statement of the fact, as in the complaint in that case, that all the property in the district is not of similar character, is not sufficient to defeat the organization.

The judgment in each of the cases is affirmed.

KIRBY, J., dissents.