CITY OF FORT SMITH, ARKANSAS *v.*
ODELL BREWER, PAUL BROWDER AND
DAVID CORBIN, FOR THEMSELVES AND AS
REPRESENTATIVES OF A CLASS

73-179                          502 S.W. 2d 643

Opinion delivered December 24, 1973

*Daily, West, Core & Coffman,* for appellant.

*Pearce, Robinson & McCord,* for appellees.

JOHN A. FOGLEMAN, Justice. This appeal involves questions about the amount of holiday pay to which firemen in the City of Fort Smith are entitled, and the terms on which it is to be paid. It requires a construction of Act 132 of 1955, as amended by Act 264 of 1957, now appearing as Ark. Stat. Ann. §§ 19-2108 and 19-2109 (Repl. 1968). The action was instituted by appellees Brewer, Browder and Corbin, as a class action on behalf of all firemen of the city. They sought to recover pay for the holidays specified by the statute in lieu of additional days of vacation theretofore granted. They based their action upon an election of the firemen evidenced by a letter to the city's board of directors, dated April 23, 1971, signed by 86 members of the fire department. On June 21, 1971, the city passed its ordinance, No. 2896, effective July 1, 1971, honoring the election. This ordinance provided for "holi-

day pay" by adding one day of pay to every other bi-weekly pay period, beginning July 1, 1971. Since there are 26 such payroll periods, this would result in payment for 13 holidays. After this ordinance was passed, appellees amended their complaint to challenge it on the method of calculation of a "day's pay" utilized and the allowance of only seven days of benefits in the year 1971. Appellees contended that their work shift required that they be paid holiday pay on the basis of their pay for a 24-hour work shift and that they should be paid for 13 rather than seven holidays during 1971.

The matter was submitted to the circuit court upon a stipulation of facts. The following additional facts, among others, were stipulated:

1. Prior to 1971, the Fort Smith firemen accepted 13 consecutive days of paid vacation in lieu of holiday equalization pay.

2. All firemen receive a vacation of 15 days each calendar year with pay.

3. Those firemen who accepted a holiday vacation of 13 consecutive days prior to July 1, 1971, have no claim in the calendar year 1971 to equalization pay. Others received no vacation time for holiday equalization.

4. An ordinary day's work for a fireman is a 24-hour period beginning at 6:30 a.m. on one day and ending at 6:30 a.m. on the next, after which the fireman is off active duty, although subject to call, for a 48-hour period between each work period.

5. The city has paid firemen on a biweekly basis, since 1967. During a biweekly pay period, a fireman will average working 4 2/3 work periods of 24 hours each and average 56 hours active duty per week or 112 hours per biweekly pay period.

6. In calculating holiday equalization pay under Ordinance No. 2896, and for all budgetary purposes, except for computation of overtime, the city divides

the biweekly salary of each grade and range of firemen by 10, as the city had done for payment of non-uniformed employees and for unused vacation and sick leave time for policemen.

7. Overtime is paid to firemen on an hourly basis determined by dividing biweekly salary by 112.[1]

8. Since 1971 was not a biennial election year, the three election days listed as holidays in the statutes were not observed in 1971, and the city contends that the firemen were entitled to pay for only 10 holidays in 1971 and other odd-numbered years.

The city administrator testified that those firemen who did not receive the full 13 days of additional paid vacation in 1971, would receive seven days of holiday equalization pay, and the city had offered those firemen three days' vacation in addition to the seven days' holiday pay. He also stated that non-uniformed employees worked 80 hours during a payroll period and policemen averaged 40 hours work per week. It was his understanding that firemen could not leave the city during the 48 hours they were subject to call without calling and obtaining permission.

The trial court entered judgment, finding that: the proper method of calculating each day of holiday equalization benefit is to divide the biweekly salary by 4 2/3; Ark. Stat. Ann. §§ 19-2108 and 2109 provide for 13 days of holiday equalization benefits in each calendar year; the firemen are entitled to receive holiday equalization pay for the period of time prior to the effective date of their election in the form of pay and the city may not provide such benefits in the form of days of vacation.

We disagree with the circuit judge's conclusions. At the outset, we should say we also disagree with appellees' contention that these are findings of fact. The facts were undisputed, and the only questions involved turned upon interpretation of Acts 132 of 1955, as amended by

---

[1]The city administrator explained that overtime was calculated on an hourly basis, because a fireman's overtime work might be less than a full day.

Act 264 of 1957, appearing as Ark. Stat. Ann. §§ 19-2108, 2109.

Appellant's first point for reversal is that the circuit court's holding is erroneous, because it provides appellees with three days' pay for each day of holiday benefit. It argues that the city's method of payment is in keeping with the intent of the act. We agree with this contention. In order that our interpretation of the act be better understood, we set out the act as it appears in Arkansas Statutes Annotated, Volume 2B, with that portion added by the 1957 amendment italicized:

> From and after the passage of this Act all firemen shall be paid for the thirteen [13] Arkansas legal holidays as set forth in Sec. 69-101 and 69-104 of the Arkansas Statutes. Firemen shall also be paid for any additional holidays which may hereafter be declared by legislative act. [Acts 1955, No. 132, § 1, p. 317.] Said equalization pay shall be based on each man's daily rate of pay and in addition to the regular pay schedule. This equalization pay for the thirteen [13] holidays shall be pro-rated and paid during the regular payroll periods; *except that in lieu of said pay, firemen in said cities and towns may accept paid vacations not to exceed thirteen (13) days in any one [1] year. Said paid vacations to be in addition to any vacation time to which said firemen may now be entitled under city ordinance or departmental rules or departmental policy.* [Acts 1955, No. 132, § 2, p. 317; 1957, No. 264, § 1, p. 808.]

We have previously held that the legislative intention of a similar act affecting policemen was that policemen be paid additional compensation for all legal state holidays regardless of whether they actually worked on each of them. *Deason* v. *City of Rogers*, 247 Ark. 1061, 449 S.W. 2d 410. The overriding purpose of the act was expressed in the key words "equalization pay." If it could be said that the language of the body of the 1955 Act does not clearly express the General Assembly's intention that firemen be paid for holidays they might or might not receive, in order that they stand upon the same footing as most city employees who do not work on these holi-

days, but are paid, nevertheless, all doubt may be resolved by the title and emergency clause of the act, to which we resort in such cases. *Cook* v. *Bevill,* 246 Ark. 805, 440 S. W. 2d 570; *Rouse* v. *Weston,* 243 Ark. 396, 420 S.W. 2d 83; *Roscoe* v. *Water & Sewer Improvement District No. 1,* 216 Ark. 109, 224 S.W. 2d 356; *Sager* v. *Hibbard,* 203 Ark. 672, 158 S.W. 2d 922; *Hollis* v. *McCarroll,* 200 Ark. 523, 140 S.W. 2d 420; *Taylor* v. *J. A. Riggs Tractor Co.,* 197 Ark. 383, 122 S.W. 2d 608. The title reads:

> AN ACT Providing Equalization Pay for Firemen for the Thirteen Legal Holidays During Each Calendar Year Based On Their Daily Rate of Pay and in Addition to Their Regular Pay Schedule. Declaring an Emergency and for Other Purposes.

The emergency declared was based upon this statement in Sec. 4 of the Act:

> It is necessary and essential for firemen to work on legal holidays for the protection of the public peace and safety, and adequate fire forces must be maintained at all times. On holidays firemen are denied the free vacation and leisure time enjoyed by other employees and that such equalization pay is needed by the firemen to give them more equitable and adequate support for their services and for the support of their families, and to maintain their present high standard of morale and efficiency.

If any lingering doubt be left, it was completely resolved by the 1957 amendment which permitted the firemen to accept paid vacations not to exceed 13 days in any one year in lieu of "equalization pay." Clearly, acceptance of the paid vacation time would guarantee that every fireman would receive as much time off work for holidays, without loss of pay, as other city employees. It would be rather odd to suggest, as appellees do, that the legislature somehow expected to equalize the position of the firemen of Fort Smith by giving them a "daily rate of pay" which resulted in their being virtually three times as well provided for in this respect as other city employees, or that the firemen of any city whose working periods for firemen are arranged as those in Fort Smith

should be so much better provided for than those in cities where work shifts may be on a 12- or eight-hour basis. It also seems most illogical to ascribe to the General Assembly an intention that the firemen in any city, by merely accepting vacation with pay, would receive approximately one-third as much as they would receive if they took the benefit in the form of "equalization pay." We can only assume that the legislative branch meant to "equalize" so far as possible. Even though it is not for us to pass upon the logic or wisdom of a clearly expressed legislative intention, we should never construe an act, which does not state the intention in clear and unambiguous terms, to reach an illogical result, when it can be construed to reach a logical one. *Warfield* v. *Chotard,* 202 Ark. 837, 153 S.W. 2d 168; *Ledbetter* v. *Hall,* 191 Ark. 791, 87 S.W. 2d 996; *LaFargue* v. *Waggoner,* 189 Ark. 757, 75 S.W. 2d 235; 2A Sutherland, Statutory Construction (Fourth Edition) 37, § 45.12; 50 Am. Jur. 385, Statutes, § 377; 82 C.J.S. 540, Statutes, § 316. See also, *Arkansas State Highway Commission* v. *Mabry,* 229 Ark. 261, 315 S.W. 2d 900; *Watson* v. *Harper,* 188 Ark. 996, 68 S.W. 2d 1019; *Wilson* v. *Biscoe,* 11 Ark. 44.

Still another approach to ascertainment of legislative intent, when ambiguous, is to construe a new act in the light of analogous acts or acts in pari materia. *Indian Bayou Drainage District* v. *Dickie,* 177 Ark. 728, 7 S.W. 2d 794; *Wilkin* v. *Special School District,* 181 Ark. 1029, 29 S.W. 2d 267; *Cooper* v. *Town of Greenwood,* 195 Ark. 26, 111 S.W. 2d 452; *Prewitt* v. *Warfield,* 203 Ark. 137, 156 S.W. 2d 238; *Graves* v. *Burns,* 194 Ark. 177, 106 S.W. 2d 602; *Connelly* v. *Lawhon,* 180 Ark. 964, 23 S.W. 2d 990. See also, *Smith* v. *Page,* 192 Ark. 342, 91 S.W. 2d 281; *Golden* v. *McCarroll,* 196 Ark. 443, 118 S.W. 2d 252; *State* v. *Fidelity & Deposit Company of Maryland,* 187 Ark. 4, 58 S.W. 2d 696; *Chandler* v. *Chandler,* 211 Ark. 332, 200 S.W. 2d 508; *Ross* v. *Rich,* 210 Ark. 74, 194 S.W. 2d 297. We have said that, in construing any statute, the court should place it beside other statutes relevant to the subject and give it a meaning and effect derived from the combined whole. *Boone County Board of Education* v. *Taylor,* 185 Ark. 869, 50 S.W. 2d 241.

For the purpose of construction of such a statute, resort may be had to its relation to other laws. *Ledbetter*

v. *Hall,* supra. Ark. Stat. Ann. § 19-2105 is the statute providing for vacations for firemen. It requires that each employee of a city fire department "be granted an annual vacation of not less than fifteen [15] days with full pay." When this act is considered along with the optional additional 13 days' vacation in lieu of "equalization pay," the intention that this pay be consistent with that provided for vacations, regular or additional, seems even clearer. It is at least clear that the legislature recognized that there was a different standard as to vacation pay, when by Act 241 of 1971 it brought firemen into the purview of the act theretofore requiring a uniform basis for accumulation of sick leave for policemen. See Act 393 of 1969 and Ark. Stat. Ann. §§ 19-1718—1720. When this was done, the firemen were permitted to accumulate sick leave on the basis of "working days," which were specifically defined by the amendatory act as "a tour of duty." If the General Assembly had intended for the act in question to apply in the same manner, it would have defined its terms as it did in Act 241 of 1971, or it would have used the latter act as a vehicle for amending Ark. Stat. Ann. §§ 19-2108, 2109.

When all factors are considered, it seems obvious to us that the adjective "daily" modifying "rate of pay" in the act in question should be applied with the same connotation as the noun "days" in the same section of the act. The mere fact that the city has endeavored to simplify administrative pay calculations for budgeting and payroll purposes by defining a day's pay as one-tenth of the biweekly pay instead of one-fourteenth to conform with the practice as to non-uniformed employees is not so inconsistent with the construction for which appellant contends to be given serious consideration in interpreting the governing act. Neither do we think it reasonable or logical to think the legislature intended that the city could increase or decrease holiday equalization pay by the simple expedient of changing the work shifts of firemen.

Consequently, we cannot accept appellees' contention that in the context of the act in question, "a man's daily rate of pay" is based entirely upon the 24-hour work shift, to the exclusion of the 48 hours between shifts, when the

fireman is off duty, but subject to call. Our construction makes the terms of the act consistent with one another and with other legislation. It is also consistent with the rules of statutory construction. The construction urged by appellees and adopted by the trial court is not productive of the degree of consistency desirable in construing statutes.

As a second point, appellant contends that the trial court erred in holding that firemen should be paid for 13 holidays in calendar years in which no elections are held, apparently because Ark. Stat. Ann. § 19-2108 provides that "all firemen shall be paid for the thirteen (13) Arkansas legal holidays as set forth in §§ 69-101 and 69-104." Yet, three of these days are election days, which do not occur in odd-numbered years. Here again, we believe the circuit judge overlooked the purpose and policy of the acts, i.e., to equalize the situation of the firemen with that of employees who did not work on the specified holidays but were still paid as if they had. There is no intimation that any of these employees is not required to work in odd-numbered years on days which would have been election days in an even-numbered year. The result reached by the circuit court would result in an over-compensation rather than an equalization, because other city employees would be compensated for only 10 holidays in odd-numbered years rather than 13. The argument that firemen are to be paid for 13 holidays in every year overlooks the fact that they are to be paid for the 13 set forth in specific statutes and three of these are election days that occur biennially instead of annually. There is no indication that firemen are to be paid for holidays that do not occur. Furthermore, the language in § 19-2109, that firemen "may accept paid vacations not to exceed thirteen (13) days in any one [1] year" should be a conclusive indication that they might be paid for less but not more.

Both parties refer to *Deason v. City of Rogers,* 247 Ark. 1061, 449 S.W. 2d 410, on this point, but it really has no significance here. As appellees point out, this issue was not before the court in that case. It hardly could have been for the case reached this court on a demurrer to a complaint of a policeman seeking pay for the

13 holidays whether he worked or did not work on the holidays. The case was remanded, and there is no holding either express or implied that the policeman was entitled to pay for 13 days each year.

The fact that Fort Smith previously allowed 13 days of vacation each year as equalization has no real bearing on the question, because an administrative or legislative determination by the officials of one city certainly is not to be accorded any significant weight in construction of a statute governing hundreds of cities and towns. There is no maximum limit on the number of days of vacation a city may allow firemen.

We likewise agree with appellant that the city is not required to give holiday equalization pay for 13 days to those firemen who did not receive paid holiday vacations prior to July 1, 1971. The circuit court held that the city could not provide for these benefits by granting days of paid vacation. Yet, some of the firemen had already been granted 13 days of paid vacation. The city provided for equalization pay for seven holidays to those who had not. The mid-year election made by the firemen would certainly be disruptive to orderly administration of the department's financing, to say the least. But the city does not question the right of the firemen to make a new election at the time they did. Consequently, we do not have to be concerned with that question. Yet, it seems that, insofar as possible, the city could take steps to make the election applicable only for one-half the year and allow paid vacation time for all holidays to be considered in excess of the seven for which pay is being added.

We cannot agree that this issue is not before the court. It is clear that the circuit judge thought it was. In their complaint appellees asked that those firemen who had not been given 13 additional days of paid vacation be awarded a judgment in the amount of equalization pay due them. Evidence was given on the subject, without objection by appellees. The trial court in its judgment stated the opposing contentions of the parties on this issue, and we find no objection raised to this statement.

The judgment is reversed.

BYRD, J., dissenting.

CONLEY BYRD, Justice, dissenting. It looks to me that when the Legislature got through enacting Ark. Stat. Ann. §§ 19-2108 and 19-2109, the firemen in the several cities of this state were entitled to be paid for 13 holidays at "each man's daily rate of pay", and that instead thereof, each firemen had an option to elect to take an additional 13 days vacation. Now that the majority of this court has interpreted this statute, thirteen does not mean thirteen but ten. "Daily rate of pay" is now an average wage selected by the city, and the option to receive vacation time in lieu of pay is a qualified option subject to the control of the city's budget.

I submit that every court in this nation, except this court, that has been called upon to construe the term "daily rate of pay" or "daily wage" has calculated the "daily rate of pay" in the same manner that the trial court used—*i.e.*, by dividing the pay received during the pay period by the number of days worked. See *Carlson v. Condon-Kiewit Co.*, 135 Neb. 587, 283 N.W. 220 (1939), and *Franklin* v. *J. P. Floria & Co.*, 158 So. 591 (La. App. 1935). Laws are designed to promote the general welfare without regard to specific and individual results.

For the reasons stated I would affirm the trial court.