The Honorable Tim Wooldridge State Representative 100 College Drive Paragould, AR 72450
Dear Representative Wooldridge:
This is in response to your request for an opinion regarding the statutory provisions for accumulated sick leave for fire fighters. Specifically, you inquire as to whether there are "contradictions between Sections 1 and 3" of Act 393 of 1969, and you state that various municipalities interpret this law differently.
It is my opinion that this act is not contradictory.
The relevant Code section is A.C.A. § 14-53-108 (Cum. Supp. 1991), which addresses uniform sick leave for fire fighters. Subsections a(1) and (2) provide as follows:
 (a)(1) From and after April 11, 1969, all fire fighters employed by cities of the first and second class shall accumulate sick leave at the rate of twenty (20) working days per year beginning one (1) year after the date of employment.
 (2) If unused, sick leave shall accumulate to a maximum of sixty (60) days unless the city, by ordinance, authorizes the accumulation of a greater amount, in no event to exceed a maximum accumulation of ninety (90) days, except for the purpose of computing years of service for retirement purposes.
Thus, the Arkansas legislature has provided that while employed as a fire fighter an accumulation of sick leave cannot exceed sixty (60) days unless the city, by ordinance, authorizes the accumulation of a greater amount, not to exceed ninety (90) days. Sections 14-53-108(c)(1) through (d) contemplate how these sick leave benefits will be paid upon death or retirement. They provide as follows:
 (c)(1) If, at the end of his term of service, upon retirement or death, whichever occurs first, any fire fighter has unused accumulated sick leave, he shall be paid for this sick leave at the regular rate of pay in effect at the time of retirement or death.
 (2) Payment for unused sick leave in the case of a fire fighter, upon retirement or death, shall not exceed three (3) months' salary unless the city, by ordinance, authorizes a greater amount, but in no event to exceed four and one-half (4 1/2) months' salary.
 (d) Cities with populations of over seventy thousand (70,000) citizens shall have the option of providing sick leave for fire fighters to accumulate at a rate of fifteen (15) working days per year beginning with the date of employment and decreasing to twelve (12) working days beginning four (4) years after employment. Unused sick leave shall accumulate to fire fighters provided with fifteen (15) and twelve (12) working days per year sick leave to a maximum of one hundred (100) days.
Your question involves a perceived conflict between firefighters receiving a sixty-day maximum accumulation of sick leave and, upon retirement, being eligible to receive a maximum of three months salary in sick leave pay. The same perceived conflict exists when the city has enacted ordinances extending these amounts.
It is my opinion that this statutory scheme does not contain conflicting provisions. A distinction exists between the payment of salary and the accumulation of sick leave days. When a firefighter retires, for example, with a fully accumulated sixtydays sick leave, his payment for accumulated sick leave will not necessarily translate to sixty days salary. Under this statute, in my opinion, the fire department is required to use the sixty sick leave days to fill out what would have been the firefighter's working schedule, and pay him for the period of time the sick leave will cover. For example, if firefighters worked a forty hour, five day work week, sixty days sick leave would fill out twelve weeks of work (60 days divided by 5 days a week = 12 weeks). This would translate to roughly three months salary.
There is, therefore, no conflict in the fact that firefighters are authorized to accumulate (absent an ordinance) a maximum of sixty days sick time; but are restricted in terms of payment upon retirement by a three month salary cap. Sixty days of sick leave does not necessarily translate to sixty days of salary, but will in most cases translate to more than this figure.
The calculation of sick leave pay for most firefighters, however, is complicated by the fact that firefighters do not typically work forty hour five day work weeks. It is my understanding that they often work either ten twenty-four hour shifts a month, or one forty-eight hour shift each week. The process of calculating their sick leave pay upon retirement must therefore take this into account. The procedure can be best explained by reference to some examples.
Firefighters acquire twenty "working days" of sick leave per year, (after their first year). Before Act 842 of 1983, it was clear that these "working days" included a "tour of duty." The firefighter, therefore, prior to the 1983 act, acquired twenty "tours of duty" a year to be used as sick leave. This is why in Op. Att'y. Gen. No. 81-083, (copy enclosed), in response to a question about the calculation of firefighter sick leave pay upon retirement, it was stated that a firefighter with sixty accumulated days who works ten twenty-four hour shifts a month would be entitled to six months pay, were there not a three month salary limitation. The sixty days, which were "tours of duty" were used to fill his schedule, ten days a month for the ten tours of duty he worked each month, for a total of six months, (60 days divided by 10 days a month = 6 months).
Act 842 of 1983, however, deleted the language defining "working day" as a "tour of duty." In an absence of a definition of "working day," it is my opinion that this term refers to an eight hour working day. See generally, City of Fort Smith v.Brewer, 255 Ark. 813, 502 S.W.2d 643 (1973), and generally Op. Att'y Gen. No. 92-186 (copy enclosed).
In Brewer, the Arkansas Supreme Court determined that the amount of holiday pay to which firemen are entitled should not be based upon a "tour of duty," or a 24-hour work shift. To so conclude, the court reasoned, would entitle firefighters to three times the amount of holiday pay as other city workers. The court therefore concluded that it was not inconsistent with the statutes for the city to divide the firefighter's biweekly pay by ten (according to two five day work weeks per pay period) and pay the firefighters holiday pay based upon this "daily rate of pay," and not based upon twenty-four hours pay as the "daily rate of pay."
Similarly, with reference to payment of sick leave upon retirement, if payment is based upon the use of one sick leave day per "tour of duty" firefighters would be roughly three times as well compensated in this regard as police officers who also accumulate twenty "working days" a year, but who often work a five-day forty hour work week. See A.C.A. §14-52-107(a)(1)(1987).
The Brewer decision indicates that in the absence of clear legislative guidance, cities will be granted some discretion in equalizing the benefits of firefighters in light of their unique schedules, and thus, in my opinion, in determining what constitutes their "working day." A recent opinion of this office with regard to military leave for firefighters supports the conclusion that in the absence of a definition of "day" in a statute, a "day" with reference to the shifts of firefighters, should be construed to mean an eight hour day. See Op. Att'y. Gen. No. 92-186. In this opinion, which relies upon City of FortSmith v. Brewer, it was concluded that a "day" for purposes of acquiring military leave was an eight hour day, and not a twenty-four hour shift. See also, Sherwood v. American SugarRefining Co., 287 F. 721 (D.C.N.Y. 1922).
It could be contended, therefore, in light of this opinion, that cities would be justified in calculating a firefighter's "working day" on the basis of an eight hour working day. Under this interpretation, firefighters would be entitled to twenty eight-hour "working days" per year in sick leave. When they use this sick leave, therefore, or when they are paid for it upon retirement, they would use one "working day" for each eight hours of work. In this manner, they would not be compensated three times as much. Brewer, supra. For example if a firefighter misses a twenty-four hour shift, or his sick leave pay upon retirement is being spread over a working schedule which includes twenty-four hour shifts, three sick leave days should be attributed to one twenty-four hour shift. Thus a firefighter who works ten twenty-four hour shifts a month with a total of sixty accumulated sick leave days would be entitled to payment of roughly two months salary. He must use thirty sick leave days a month to fill out his schedule (he works 240 hours a month and must use thirty eight-hour sick days to cover this period — 240 divided by eight = thirty.) Sixty total days divided by thirty days a month equals two months salary. A firefighter who works one forty-eight hour shift a week with a fully accumulated sixty days would be entitled to payment for ten weeks salary. He must use six sick leave days per week to fill out this schedule, (a 48-hour work week divided by eight-hour sick leave days = six days per week), and (60 days divided by 6 days a week = ten weeks).
It should be noted that the calculation of sick leave pay in this fashion results in firefighters receiving less time paid sick leave than is received by employees who work a more routine schedule. An employee who works a five day forty hour work week and has sixty accumulated days of sick leave, would, as noted above, be entitled to twelve weeks of sick leave pay upon retirement. In many instances, these firefighters work more than forty hours a week, and thus sixty eight-hour days of sick leave will cover a shorter number of weeks for them than it will for someone who only works forty hours a week. In addition, the more hours a firefighter works in a week, the less number of weeks sick leave pay he will be entitled to upon retirement.
Calculation based upon an eight hour working day for these firefighters would therefore appear less than equitable. Just as the Brewer decision stands for the proposition that firefighters should not be overcompensated with regard to benefits because of their unique schedules, it is my opinion that the court's reasoning similarly stands for the proposition that they should not be penalized for them either.
Cities may thus have the discretion to define a firefighter's "working day" so that a firefighter's payment for sick leave pay will equate with other employees who work more routine schedules. This can be accomplished by determining how many hours the average working day of the firefighter consists of, and accumulating and paying sick leave on this basis.
As in Brewer, where pay was averaged over a ten week pay period to determine the "daily rate of pay," it is my opinion that a court would uphold the averaging of a firefighter's work week to determine what constitutes his or her average "working day," and would allow the accumulation of "working days" on this basis, and the payment of sick leave upon retirement based upon this average.
For example, if a firefighter works a set number of hours each week, for example two twenty-four hour shifts each week, (forty-eight hours each week) this number is simply divided by five normal working days per week. Thus this firefighter's average "working day" is 48 divided by 5, which equals a 9.6 hour working day.
It is this figure which should be counted as having been accumulated by the firefighter. He accumulates twenty "working days," based upon the number of hours in his average "working day." When computing his sick leave pay on retirement, the number of days accumulated, for example, a full sixty days, is spread over his working schedule to determine how much salary he is due. For example a firefighter who works forty-eight hours each week works a 9.6 hour average working day. He therefore has sixty 9.6 hour working days to apply to his schedule to determine his sick leave pay. He has a total of 576 hours of sick leave. (9.6 × 60 days = 576). If this total is applied to his schedule, 48 hours a week, he is entitled to twelve weeks of sick leave pay. (576 divided by 48 = 12 weeks). This is commensurate with sick leave pay for employees who work a five day, forty hour work week. They also would be paid for twelve weeks.
The calculation for a firefighter who does not work a set number of hours a week, but rather a set number of hours a month, (e.g. ten twenty-four hours shifts each month) is a little more complicated, but the total number of hours accumulated by this firefighter is similarly applied to his schedule to determine the sick leave pay. For example, a firefighter who works ten twenty-four hour shifts each month works a total of 2,880 hours a year. (240 hours a month × 12 months in a year = 2,880). This equates to roughly 55 hours a week (specifically 55.384 hours a week). There are, for example, 261 weekdays in 1993. This firefighter's average working day, based upon a five day work week, therefore, is 11.03 hours a day. (2880 divided by 261 = approximately 11.03. If he has a fully accumulated sixty days, therefore, upon retirement, he has a total of 661.8 hours of sick leave (60 × 11.03 = 661.8). This figure is applied to his schedule to determine to how much salary he is entitled. He works, as noted above, approximately 55 hours a week, or really 55.384 hours a week. He is entitled to roughly twelve weeks of sick leave pay. (661.8 divided by 55.384 hours a week = 11.94 or approximately 12 weeks.)
It is easy to see that the effect of the calculations above is to grant firefighters amounts of sick leave pay equivalent to employees who work more routine work weeks. This, in my opinion, was the impact and intent of the Brewer decision. It is well-established that the legislature is presumed in enacting a statute to have had in mind the judicial construction of former statutes on the subject; and it will be assumed that the statute was enacted in light of this construction. Brown v. Davis,226 Ark. 843, 294 S.W.2d 481 (1956). It is my opinion that this doctrine has application to the repeals of statutes as well. The Arkansas legislature, therefore, in repealing the former definition of "working day" as including a tour of duty, is charged with the knowledge of decisions of the Arkansas Supreme Court, specifically the Brewer decision and will be presumed to have amended the legislation in light of this construction.
It is therefore my opinion that the two sections of the Act you reference are not contradictory, and that the various municipalities can legally calculate sick leave pay according to discussion above.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General T. Jeff Vining and Deputy Attorney General Elana Cunningham Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh