Andrew ANSELMO, Francis J. DiMento and James J. Sullivan, Jr.

v.

Richard J. JAMES and Dawn James.

Civ. A. No. 78–400–F.

United States District Court, D. Massachusetts.

April 24, 1978.

---

Thomas C. Cameron, Boston, Mass., for plaintiffs.

Leonard Pass, William M. Appel, Revere, Mass., for defendants.

## OPINION

FREEDMAN, District Judge.

In this action for declaratory and injunctive relief, the Court is asked to decide whether the Great Blizzard of 1978 [1] extended the statutory period for redemption of real estate seized and sold by the Internal Revenue Service (the "IRS").[2]

The essential facts are not in dispute. On October 12, 1977, undeveloped coastal land in Revere, Massachusetts (the "Land")[3] owned by the plaintiff Anselmo [4]

---

1. The Great Blizzard of 1978 lasted two days, February 6 and 7, 1978, and virtually closed much of the Commonwealth of Massachusetts for an entire week. Coastal areas were hardest hit by the storm.

2. The redemption period set forth in section 6337(b)(1) of the Internal Revenue Code of

1954 is 120 days from the date of sale. 26 U.S.C. § 6337(b)(1).

3. The Land is more fully described in Appendix A to this Opinion.

4. Anselmo's ownership in the Land was subject to a mortgage he granted on May 4, 1976 to plaintiffs DiMento and Sullivan to secure the

was sold at public auction by the IRS to satisfy Anselmo's tax indebtedness as transferee of his deceased father. The Land was purchased at the auction by the defendants Richard and Dawn James[5] who paid $3,000[6] and received a certificate of sale.

Anselmo had a statutory right to redeem the Land within 120 days of the sale[7] by paying to the Jameses the amount paid by them for the Land plus interest at the rate of 20% per annum. 26 U.S.C. § 6337(b).[8] Anselmo claims that he intended to redeem the Land on Tuesday, February 7, 1978, but was unable to travel from his home in Winchester, Massachusetts to the James' residence in Revere because of the Blizzard.

The Court takes judicial notice of the Great Blizzard and its effects. Travel during the storm itself was nearly impossible. Coastal areas suffered from severe flooding as well as high winds and deep snow. The Governor of the Commonwealth[9] proclaimed a state of emergency[10] on February 7, 1978, banning all non-essential vehic-

ular traffic. On February 9, the Governor issued Executive Order No. 142[11] entitled "State of Emergency Executive Order" which extended the earlier proclamation, declared February 7 through 12, 1978 to be legal holidays in certain counties of the Commonwealth, including those in which Winchester and Revere are located, and banned the use of private passenger vehicles.[12] The ban in seven communities, including Revere, was extended until midnight on Monday, February 13, 1978.

Anselmo was able to reach the James' residence in Revere by public transportation on Monday, February 13. His tender of three thousand, two hundred and ten dollars ($3,210)[13] was refused. Anselmo then tendered the same sum to Robert E. Cuoco, who, on behalf of the District Director of the IRS, also refused to accept the tender. Both attempts at tender were refused because the 120-day period provided for in section 6337(b) of the Internal Revenue Code of 1954[14] ("Section 6337(b)") expired on Thursday, February 9, 1978.

payment of $4,000. The mortgage was recorded in the Suffolk County Registry of Deeds at Book 8865, Pages 628–633.

5. Herbert Mosher, District Director of the IRS, was originally named as an additional defendant. On February 24, 1978, pursuant to Federal Rule of Civil Procedure 41(a)(1), plaintiffs dismissed the action as to Mr. Mosher.

6. No party disputes that the Land is worth in excess of $10,000 or that this Court has jurisdiction over the subject matter of the action under 28 U.S.C. § 1331(a).

7. The 120-day period expired on Thursday, February 9, 1978.

8. Section 6337(b) of the Internal Revenue Code of 1954, 26 U.S.C. § 6337(b), provides:
 (b) Redemption of real estate after sale.—
 (1) Period.—The owners of any real property sold as provided in section 6335, their heirs, executors, or administrators, or any person in their behalf, shall be permitted to redeem the property sold, or any particular tract of such property, at any time within 120 days after the sale thereof.
 (2) Price.—Such property or tract of property shall be permitted to be redeemed upon payment to the purchaser, or in case he can-

not be found in the county in which the property to be redeemed is situated, then to the Secretary or his delegate, for the use of the purchaser, his heirs, or assigns, the amount paid by such purchaser and interest thereon at the rate of 20 percent per annum.

9. The Honorable Michael S. Dukakis, Governor.

10. On the Governor's request, the President by telegram dated February 10, 1978, declared a major disaster for the State of Massachusetts because of damage due to coastal flooding. The President authorized federal relief and recovery assistance for the affected areas.

11. A copy of Executive Order No. 142 is set forth in Appendix B to this Opinion.

12. The offices of the IRS were closed during this period in the storm affected area.

13. The parties agree that Anselmo was the proper party to make such redemption, that tender was in proper form and in an amount sufficient to satisfy the requirements of section 6337(b) of the Internal Revenue Code of 1954, 26 U.S.C. § 6337(b).

14. 26 U.S.C. § 6337(b). See n. 8, *supra.*

Plaintiffs filed this action on February 14, 1978.[15] The matter was heard before me on February 17, 1978, at which time the parties agreed to an order restraining the Jameses from tendering their certificate of sale to the IRS in exchange for a deed to the Land pending this Court's decision on the merits. The parties further agreed that the sole issue presented is the timeliness of the February 13th tenders.[16] While not so labelled by the parties, the action presents itself to the Court in the framework of cross-motions for summary judgment and it will therefore be so treated.[17]

 The owner's right to redeem property seized by the United States for nonpayment of taxes has long been recognized. *E. g., Bennett v. Hunter,* 76 U.S. (9 Wall.) 326, 19 L.Ed. 672 (1869). The Supreme Court has stated that:

It is the general rule of courts to give to statutes authorizing redemption from tax sales a construction favorable to owners, particularly when they provide, as in the present case, full indemnity to the purchaser, and impose a penalty on the delinquent.

*Corbett v. Nutt,* 77 U.S. (10 Wall.) 464 at 474–475, 19 L.Ed. 976 (1870) (footnote omitted). While the general rule is one of leniency to the owner, *e. g., United States v. Lowe,* 268 F.Supp. 190 at 192 (N.D.Ga. 1966),[18] and while I am sympathetic to plaintiffs, I cannot rule in their favor.

Plaintiffs' first argument that their tender was timely is based upon the general rule of leniency to the owner. They argue in effect that equitable considerations should persuade the Court to rule that their February 13 tender was timely even though the 120-day statutory period expired on

February 9. Plaintiffs cite *Guthrie v. Curnutt,* 417 F.2d 764 (10th Cir. 1969), in support of their contention. In *Guthrie,* the plaintiff was the owner of an undivided one-half interest in certain real property. Plaintiff's interest in the property was seized for nonpayment of taxes and was purchased at the tax sale by the defendant who owned the other undivided one-half interest in the property. The efforts of plaintiff's attorney to effect tender " . . . were frustrated by the actions and attitudes of the defendant." On the last day for redemption,[19] plaintiff's agent offered tender to an officer of the IRS who refused it and said that redemption would have to be effected the following day from the defendant himself. The defendant refused the tender on that day because the redemption period had expired. The trial court found that plaintiff's inability to redeem was the result of "purposeful action by the defendant." The tender to the IRS was therefore held to be effective under the provision in Section 6337(b) permitting tender to the IRS in the case that the purchaser cannot be found in the county in which the property to be redeemed is located. 417 F.2d at 765. The Court of Appeals for the Tenth Circuit affirmed. *Id.* at 766.

The *Guthrie* reasoning is inapplicable to the case at bar. First, the *Guthrie* court's finding that the defendant could not "be found in the county where the property was located" was premised on the conclusion that the defendant had purposefully evaded tender. Such wrongdoing on the part of the defendants at bar is conspicuously absent. Second, even assuming that defendants at bar could not "be found within the county," plaintiffs' tender to the IRS was

---

**15.** Plaintiffs complied with Fed.R.Civ.P. 67 by depositing $3210 with the Court.

**16.** The parties agreed to submit the matter to the Court on written memoranda which have now been filed.

**17.** As noted, the matter has been submitted on memoranda addressing the legal question of the timeliness of Anselmo's tender. There are no genuine issues of material fact.

**18.** See generally Annot. 12 A.L.R. Fed. 979 (1972).

**19.** The relevant period in *Guthrie* was one year. The redemption period was reduced to 120 days effective November 2, 1966 by amendment to Section 6337(b). See 80 Stat. 1137 (1966).

not, like the tender in *Guthrie,* within the relevant statutory time period.[20]

■ The broad equitable powers of the federal courts do not include the power to extend the time for redemption under the internal revenue laws. *Ballard v. United States,* 67–2 USTC ¶ 9652 (D.Colo.1967). The Supreme Court stated in *Keely v. Sanders,* 99 U.S. 441, 25 L.Ed. 327 (1878):

> While it may be admitted that a statutory right of redemption is to be favorably regarded, it is nevertheless true that it is a statutory right exclusively, and can only be claimed in the cases and under the circumstances prescribed. *Courts cannot extend the time, or make any exceptions not made in the statute.* Redemption cannot be had in equity (*Mitchell v. Green,* 10 Metc. (Mass.) 101), except as it may be permitted by statute, and then only under such conditions as it may attach. *Craig v. Flanagan [Flanagin],* 21 Ark. 319. Thus it has been held that the pendency of the civil war, and the fact that the owner resided in another State then in rebellion, cannot enlarge his right to redeem. *Finley v. Brown,* 22 Iowa 538. It is enough, however, for the present case that there was no attempt or even offer to redeem.

99 U.S. at 445–46, 25 L.Ed. 327 (emphasis added). The terms of redemption after sale are set forth in Section 6337(b). No provision for extension of the 120-day period is contained therein.

■ Plaintiffs next argue that the case at bar falls within section 7503 of the Internal Revenue Code of 1954, 26 U.S.C. § 7503 (Section 7503), which provides:

> When the last day prescribed under authority of the internal revenue laws for performing any act falls on Saturday, Sunday, or a legal holiday, the performance of such act shall be considered timely if it is performed on the next succeeding day which is not a Saturday, Sunday, or a legal holiday. For purposes of this section, the last day for the performance of any act shall be determined by including any authorized extension of time; the term "legal holiday" means a legal holiday in the District of Columbia; and in the case of any return, statement, or other document required to be filed, cr any other act required under authority of the internal revenue laws to be performed, at any office of the Secretary or his delegate, or at any other office of the United States or any agency thereof, located outside the District of Columbia but within an internal revenue district, the term "legal holiday" also means a Statewide legal holiday in the State where such office is located.

26 U.S.C. § 7503. Plaintiffs argue that since defendants' residence was unreachable until February 13, the Court should rule that the defendants could not be "found" within the county in which the land is situated. This would entitle plaintiffs to tender upon the IRS. That being so, the declaration of February 7 through 12 as legal holidays would, plaintiffs argue, make the February 13 tender timely.[21]

Plaintiffs' argument is ingenious, but faulty. As noted above, the Court does not believe that defendants could not be "found" within the county in which the land is situated.[22] Assuming, however, that the defendants could not be "found" within the county and that plaintiffs were therefore entitled to tender the monies to the IRS, there remain two problems with plaintiffs' reasoning. The first is that there may be some question as to whether Section

---

**20.** It seems clear, from the face of Section 6337(b) that an owner's inability to find the purchaser within the county in which the property is situated serves only to permit payment to the IRS and not to extend the statutory time period for redemption.

**21.** The Court notes that the term legal holiday in Section 7503 includes state holidays only for those acts to be performed at an office of the

IRS. Plaintiffs could not, therefore, argue that the time for tender on an individual purchaser was extended by the Governor's declaration.

**22.** Although plaintiffs may have been unable to reach the defendants, there is no allegation that defendants were not there or that they purposefully evaded tender. *Cf. Keely v. Sanders, supra* at 445–46, 25 L.Ed. 327; *Guthrie v. Curnutt, supra.*

7503 is applicable to Section 6337(b) redemptions. *Cf. Silver Bell Industries, Inc. v. United States,* 76–1 USTC ¶ 9432 (10th Cir. 1976) (mailing provisions of 26 U.S.C. § 7502 not applicable to Section 6337 redemption payments where such payments are to individual purchasers). The second, and more certainly fatal problem for the plaintiffs is that even if the defendants could not be "found" in the county, and even if Section 7503 is applicable, February 7 through 12 are not of the type of legal holiday described in that section. Where tender is to be made to the IRS, " . . . the term 'legal holiday' also means a *Statewide* legal holiday in the State where such office is located." 26 U.S.C. § 7503 (emphasis added). As is discussed earlier, the declaration of February 7 through 12 as legal holidays announced by the Governor in his Executive Order No. 142[23] was expressly effective in only certain counties of the Commonwealth. These holidays were therefore not "Statewide" and did not serve to extend the Section 6337(b) 120-day redemption period.

Since the plaintiffs did not redeem the Land within 120 days of its sale according to the provisions of Section 6337(b), the defendants are entitled to summary judgment in their favor.[24] Defendants may exchange their certificate of sale for a deed from the IRS.

The result here is not as harsh as it may seem at first blush. It should be kept in mind that from the time of the tax sale, plaintiffs had 120 days to redeem the Land. By their own allegation, they admit having made no attempt to do so until February 7, the 118th day. Having waited so long, and taken the risk of unforeseen consequences of their own delay, they should not now be heard to complain of the Great Blizzard.

Judgment for defendants will issue.

### APPENDIX A

The land in Revere, comprising lots 261–262–263–264–265 and parts of lots 260 and 268 and the appurtenant flats lying to the north of said Tract, said lots being shown on a map entitled "Plan of lands belonging to the Point of Pines Trust, Revere, Mass., February 26, 1909" and recorded in Suffolk Deeds, end of Book 3359, and containing about twenty-three thousand (23,000) square feet, and being bounded and described as follows, and also shown on plan recorded with said Deeds, Book 5522 end:

| | |
|---|---|
| SOUTHERLY | by Rice Avenue, about one hundred nineteen (119) feet; |
| SOUTHWESTERLY | by a curved line at the junction of Rice Avenue and land of the Commonwealth of Massachusetts having a radius of fifty-nine and $^{51}/100$ (59.51) feet, a distance of one hundred five and $^{62}/100$ (105.-62) feet; |
| WESTERLY | by said land of the Commonwealth of Massachusetts, about one hundred twenty-five (125) feet; |
| NORTHERLY | by the flats of the Saugus River, about one hundred eighty-five (185) feet; |
| EASTERLY | by Lot 266 and a part of Lot 268 by the line between lots 265–266 extended to the Saugus River, about one hundred (100) feet; together with the appurtenant flats and riprarian rights lying to the north, so far as private ownership may extend. |

### APPENDIX B

### EXECUTIVE ORDER NO. 142

The Commonwealth of Mass

Executive Department

State House Boston 02133

State of Emergency Executive Order, February 9, 1978

Whereas, on February 7, 1978, I proclaimed a state of emergency because of the blizzard of February 6–7, 1978; and

Whereas, since such proclamation I have ordered the closing of business and the banning of non-essential vehicles within the Commonwealth; and

---

**23.** See Appendix B.

**24.** Plaintiffs are, of course, entitled to return of the $3210 they deposited with the Court under the provisions of Fed.R.Civ.P. 67.

928

Whereas, G.L. Chapter 33 Appendix, sec. 13–7(e), (f) and (k) grant to the governor authority necessary or expedient for meeting the state of emergency as it effects labor, business or work on Sundays or legal holidays, including the suspension of the operation of any law affecting employment of certain persons, and as it affects transportation within the Commonwealth; and

Whereas, I now desire to confirm and extend such proclamation and order for certain counties within the Commonwealth as set forth below.

Now, therefore, I, Michael S. Dukakis, Governor, acting pursuant to the powers vested in me as supreme executive magistrate under the Massachusetts Constitution, and pursuant to G.L. Chapter 33 Appendix, including without limitation sections 13–5, 13–7, and 13–8 thereof, hereby further order as follows with respect to the following counties: Suffolk, Middlesex, Norfolk, Essex, Bristol and Worcester:

1. February 7 through 12, 1978, are hereby declared to be legal holidays within the aforementioned counties; provided, however, that on February 10 and 11 all banks, retail food and drug stores, and such other businesses as I by order may permit may, notwithstanding any other provision of law to the contrary, open for business, and on February 12 retail food and drug stores may, notwithstanding any other provision of law to the contrary, open for business throughout the Commonwealth.

2. No private passenger vehicle, unless exempted in the following sentence shall be operated on any way within the aforementioned counties until further order by me. Private passenger vehicles operated by persons employed in the following occupations for purposes of going to and from their place of work shall be exempt from such ban:

police, fire and other public safety personnel
medical and health professions personnel
public utilities personnel
heating, oil and fuel delivery personnel
essential governmental personnel

communications, media and telephone personnel
food and drug supply and distribution personnel

Private passenger vehicles shall not include trucks, commercial vehicles, buses or other public passenger vehicles engaged in commercial activities.

3. Until I order otherwise during this emergency, the City of Boston is empowered through its police commissioner, and any other city or town is similarly empowered through its police commissioner or chief of police, to prohibit the placing of snow in the roadway of any street.

Given under the seal of the Commonwealth by me at 5:00 p. m. February 9, 1978, and filed herewith with the Secretary of the Commonwealth.

(s) Michael S. Dukakis
Michael S. Dukakis, Governor

(s) Paul Guzzi
PAUL GUZZI,
Secretary of the Commonwealth