342 S.E.2d 164

**Joseph M. PULLANO, et al., etc.**

v.

**CITY OF BLUEFIELD, W. Va., a Municipal Corporation.**

No. 16698.

Supreme Court of Appeals of West Virginia.

March 20, 1986.

Stanley M. Hostler, James F. Wallington, Hostler & Segal, Charleston, for appellants.

J.W. Feuchtenberger, Bluefield, for appellee.

MILLER, Chief Justice:

This case involves the statutory rights of municipal police officers and firefighters [1] to holiday pay under W.Va.Code, 8–14–2a, and W.Va.Code, 8–15–10a.[2] We are also presented with a question concerning the calculation of overtime pay for firefighters.

On April 30, 1980, Joseph Pullano, a police officer, and Martin Fivars, a firefighter, filed a declaratory judgment action in the Circuit Court of Mercer County on behalf of themselves and all other police officers and firefighters employed by the city of Bluefield. In this action, the following general questions were raised:

1. We will use the terms "firefighter" or "firefighters" in this opinion to refer to all members of paid fire departments.

2. When we accepted this case on appeal, we recognized that any resolution of the issues raised would have an impact on numerous municipalities throughout the State. On September 20, 1985, we had a letter sent from our clerk's office to the West Virginia Municipal League and to approximately thirty Class I, II, III, and IV municipalities with paid police and fire departments informing them of this pending case and requesting amicus curiae briefs by November 1, 1985 on the issues raised. In response to our letter, we received amicus curiae briefs from the West Virginia Municipal League, the city of Fairmont, and the city of Clarksburg.

1. Are municipalities required to recognize as legal holidays the days recommended by a governor in memoranda to all State spending units as nonworking days for State employees in calculating holiday pay for their police officers under W.Va. Code, 8–14–2a, and their firefighters under W.Va.Code, 8–15–10a?

2. Is holiday pay under W.Va.Code, 8–14–2a, and W.Va.Code, 8–15–10a, to be paid in addition to the regular or overtime pay also earned on that holiday?

3. Did the city of Bluefield correctly calculate overtime pay for its firefighters?

The circuit court held that the nonworking days for State employees recommended by the governor in various executive memoranda did not constitute legal holidays under W.Va.Code, 2–2–1 (1980). Consequently, the city was not required to give holiday pay for these days to its police officers and firefighters. Furthermore, the circuit court generally approved of the city's methods for calculating holiday and overtime pay. The police officers and firefighters challenge the circuit court's rulings as being inconsistent with the applicable stat-utes. The relevant facts and rulings of the circuit court will be discussed in more detail under each heading.

### I.

### LEGAL HOLIDAYS

It is apparent that by enacting W.Va. Code, 8–14–2a, and W.Va.Code, 8–15–10a,[3] the legislature intended to accord equal time off or additional compensation to a municipal police officer or firefighter who either worked on a legal holiday or did not work on a legal holiday because it fell on his regular scheduled day off.[4] The two statutes are almost identical, except for the fact that W.Va.Code, 8–14–2a, is applicable to "any municipal police officer" while W.Va.Code, 8–15–10a, is applicable to "any member of a paid fire department." The threshold question is what legal holidays trigger these additional benefits. To answer this question, we must examine W.Va.Code, 2–2–1, our legal holiday statute, because both the police officers' and firefighters' holiday pay statutes specifically refer to this statute as initiating the right to holiday pay.[5]

---

3. W.Va.Code, 8–14–2a, provides:

"From the effective date of this section [June 6, 1976], if any municipal police officer is required to work during a legal holiday as is specified in section one [§ 2–2–1], article two, chapter two of this Code, or if a legal holiday falls on the police officer's regular scheduled day off, he shall be allowed equal time off at such time as may be approved by the chief of police under whom he serves, or in the alternative, shall be paid at a rate not less than one and one-half times his regular rate of pay."

W.Va.Code, 8–15–10a, provides:

"From the effective date of this section [June 6, 1976], if any member of a paid fire department is required to work during a legal holiday as is specified in section one [§ 2–2–1], article two, chapter two of this Code, or if a legal holiday falls on the member's regular scheduled day off, he shall be allowed equal time off at such time as may be approved by the chief executive officer of the department under whom he serves, or in the alternative, shall be paid at a rate not less than one and one-half times his regular rate of pay."

4. We emphasize that whether a group of employees is entitled to holiday pay is determined either by specific statutes, which we have in the present case, or ordinances or collective bargaining agreements. Holiday pay is not provid-ed for employees in our wage and hour law, W.Va.Code, 21–5C–1 through –11.

5. W.Va.Code, 2–2–1 (1980), in pertinent part, provides:

"The following days shall be regarded, treat-ed and observed as legal holidays, viz: The first day of January, commonly called 'New Year's Day'; the twelfth day of February, commonly called 'Lincoln's Birthday'; the third Monday of February, commonly called 'Washington's Birthday'; the last Monday in May, commonly called 'Memorial Day'; the twentieth day of June, commonly called 'West Virginia Day'; the fourth day of July, commonly called 'Independence Day'; the first Monday of September, commonly called 'Labor Day'; the second Monday of October, commonly called 'Columbus Day'; the eleventh day of November, hereafter referred to as 'Veterans Day'; the fourth Thursday of November, commonly called 'Thanksgiving Day'; the twenty-fifth day of December, commonly called 'Christmas Day'; any national, state or other election day throughout the district or municipality wherein the election is held; *and all days which may be appointed or recommended by the governor of this state, or the president of the United States, as days of thanksgiving, or for the general cessation of*

W.Va.Code, 2-2-1, after enumerating certain specified days as legal holidays, goes on to provide as additional legal holidays "all days which may be appointed or recommended by the governor of this state, or the president of the United States, as days of thanksgiving, or for the general cessation of business." It is this language over which the legal holiday issue is fought in this case.

The appellants argue the circuit court erred in ruling that the days recommended by the governor as nonworking days for State employees are not included in calculating holiday pay under these two statutes. In their stipulation of facts in the circuit court, the parties identified the specific days recommended by then Governor John D. Rockefeller, IV, as days for which State employees were allowed off. Essentially, these days were the Governor's and President's inauguration days, Martin Luther King Day, Good Friday, the day after Thanksgiving, and one-half day on the day before Christmas and New Year's Day.

The language of W.Va.Code, 2-2-1, is clear that once the governor of this State or the president of the United States designates a day for thanksgiving or for the general cessation of business, such a day becomes a legal holiday to the same degree that the statutorily enumerated days are legal holidays under W.Va.Code, 2-2-1.

The dispute in the present case is how does a governor exercise this authority to appoint or recommend legal holidays. The city argues that the various memoranda issued by the governor are directed only to State spending units and that there is no language indicating that the governor intended to declare a legal holiday for all employees who work in this State. Furthermore, the city points out that the memoranda do not use the term "legal holiday" nor is there any reference to W.Va.Code,

2-2-1, which forms the basis for a governor's right to declare a legal holiday.

We have not had occasion to consider the question of what procedure a governor must follow in appointing or recommending a legal holiday under the general provisions of W.Va.Code, 2-2-1, thereby creating a legal holiday in addition to those specifically identified in this statute.

Legal holidays are generally created either by legislative enactments or by gubernatorial or presidential proclamations authorized by general legislation. See generally 73 Am.Jur.2d Sundays and Holidays § 5 (1974); 40 C.J.S. Holidays § 2 (1944). Of course, there are holidays other than legal holidays, since the term "holiday," as one court stated, "has reference to a day set apart for worship, for reverence to the memory of a great leader and benefactor of humanity, to rejoice over some great national or historical event, or rekindle the flame of an ideal." Vidal v. Backs, 218 Cal. 99, 105, 21 P.2d 952, 955 (1933).

Most of the cases we have decided involving legal holidays have focused on the effect a legal holiday has in computing a time period in which a certain legal act must be completed. W.Va.Code, 2-2-1 through -3, provide that when the last day on which a legal act must be performed falls on a Saturday, Sunday, or legal holiday, the period of time will be extended to the next ensuing day that is not a Saturday, Sunday, or legal holiday. See, e.g., Crawford v. Erwin, 171 W.Va. 7, 297 S.E.2d 206 (1982) (per curiam); Dixon v. Dixon, 73 W.Va. 7, 79 S.E. 1016 (1913); Logan v. Ballard, 61 W.Va. 526, 57 S.E. 143 (1907). Under common law, Sunday has traditionally been treated as a nonjudicial day. See State ex rel. Varney v. Ellis, 149 W.Va. 522, 142 S.E.2d 63 (1965). Even though Sunday is a nonjudicial day, it is not defined as a legal holiday under W.Va.Code, 2-2-1.[6]

---

business; and when any of these days or dates falls on a Sunday, then the succeeding Monday shall be regarded, treated and observed as the legal holiday." (Emphasis added).

We have quoted the 1980 version of W.Va. Code, 2-2-1, because the appellants filed their declaratory judgment action in April of 1980.

W.Va.Code, 2-2-1, has subsequently been amended on two other occasions. However, the emphasized portion of the statute, which is the focus of the present case, has not been changed.

**6.** W.Va.Code, 2-2-3, states that Saturday shall be a legal holiday solely for purposes of Rule

A majority of states have general legal holiday statutes similar to W.Va.Code, 2–2–1, listing specific holidays and granting the governor of that state the authority to recommend additional legal holidays. In the few cases which involve a governor's authority to recommend a legal holiday, there is very little discussion on the issue of what procedure a governor must follow to create a legal holiday. See, e.g., Anselmo v. James, 449 F.Supp. 922 (D.Mass.1978); Reed v. Herren, 423 So.2d 139 (Ala.1982); Los Angeles City Employees Union Local 347 v. City of El Monte, 220 Cal.Rptr. 411 (1985); Mandel v. Hodges, 54 Cal.App.3d 596, 127 Cal.Rptr. 244, 90 A.L.R.3d 728 (1976); Farrell v. Bendix Corp., 232 So.2d 419 (Fla.Dist.Ct.App.1970); Brown v. Bernard, 374 So.2d 127 (La.Ct.App.1979).

In City of El Monte, the governor of California in an executive order had declared the third Monday in January as a day in honor of the achievements of Dr. Martin Luther King, Jr. In his executive order, the governor made specific reference to California's general legal holiday statute, which empowers the governor to create legal holidays. A municipal employee's union sued the city of El Monte for holiday pay it claimed was due as a result of this additional legal holiday created by the governor.

The California appellate court held in favor of the union. The court's holding was largely premised on the fact that the governor based his order on his authority under California's general legal holiday statute. By citing this statute in the order, the court concluded the governor had evidenced his intent to create a legal holiday applicable to all citizens in the state and not simply to employees of the state.

6(a) of the West Virginia Rules of Civil Procedure.

7. The typical language used in these memoranda is exemplified by a memorandum identified as "Exhibit I" relating to the Friday after Thanksgiving:

"TO: ALL SPENDING UNITS
"FROM: JOHN D. ROCKEFELLER IV
"DATE: NOVEMBER 15, 1978
"SUBJECT: FRIDAY AFTER THANKSGIVING

In the present case, we have the affidavit submitted by Governor Rockefeller and copies of the memoranda he sent to all State spending units with regard to the days granted off. An examination of these memoranda reveals that Governor Rockefeller did not cite W.Va.Code, 2–2–1, as the authority for his actions. There also is no indication in these memoranda that the governor intended to recommend a day of thanksgiving or for the general cessation of business for all of the citizens in the State rather than simply for State employees, which is the language used in W.Va. Code, 2–2–1.[7]

Therefore, we conclude Governor Rockefeller was not exercising his authority under W.Va.Code, 2–2–1, to appoint or recommend additional legal holidays when he recommended that State employees be given additional time off. Although the statute does not explain what procedure must be followed, we conclude when a governor intends to appoint or recommend an additional legal holiday applicable to all the citizens in this State pursuant to W.Va. Code, 2–2–1, he must make such intent clear in the order or proclamation by either citing W.Va.Code, 2–2–1, or by using the applicable language of W.Va.Code, 2–2–1.

Absent this clear intent by a governor to appoint or recommend an additional legal holiday pursuant to W.Va.Code, 2–2–1, no legal holiday is created when he simply recommends that State employees be given all or part of a day off. Therefore, the extra compensation provisions provided in W.Va.Code, 8–14–2a, relating to municipal police officers, and W.Va.Code, 8–15–10a, relating to members of a paid fire department, were not triggered by Governor Rockefeller's memoranda because

"IN ORDER FOR STATE EMPLOYEES TO FULLY ENJOY THE THANKSGIVING HOLIDAY, YOU SHOULD RELEASE THE EMPLOYEES IN YOUR AGENCY ON FRIDAY, NOVEMBER 24, 1978, EXCEPT THOSE REQUIRED FOR NECESSARY BUSINESS. THIS TIME IS NOT TO BE CONSIDERED PART OF THE EMPLOYEES' ANNUAL LEAVE.
"I WISH EVERYONE AN ENJOYABLE HOLIDAY."

these statutes are predicated on the existence of a legal holiday. Consequently, the circuit court's ruling on this issue is affirmed.

Martin Luther King Day presents a different question as it centers on an interpretation of W.Va.Code, 2–2–1a (1977), which provided: "The governor shall, by proclamation, declare the third Saturday in January as a special memorial day to be known as Martin Luther King Day." We note that the legislature did not empower the governor to proclaim Martin Luther King Day as a legal holiday, but instead authorized the governor to proclaim the third Saturday in January as a "special memorial day." Obviously the legislature could have made Martin Luther King Day a legal holiday by amending the legal holiday statute, W.Va.Code, 2–2–1, to include Martin Luther King Day.

■ As we have previously pointed out, the holiday pay statutes involved in this case refer only to W.Va.Code, 2–2–1, as the legal holidays that bring the right to extra pay. We are constrained to hold that the legislature's failure to include Martin Luther King Day within the legal holiday statute, W.Va.Code, 2–2–1, forecloses this day from triggering the special holiday pay provisions of W.Va.Code, 8–14–2a, and W.Va.Code, 8–15–10a.[8]

## II.

### CALCULATION OF HOLIDAY PAY FOR MUNICIPAL POLICE OFFICERS AND FIREFIGHTERS

The circuit court did find and there is no disagreement between the parties that the city did not compensate the appellants for two legal holidays occurring by virtue of special elections which are recognized in

W.Va.Code, 2–2–1.[9] There is, however, a disagreement as to how such holiday pay is to be calculated. Under both W.Va.Code, 8–14–2a, and W.Va.Code, 8–15–10a, if either a police officer or firefighter is required to work during a legal holiday or if it "falls on … [his] regular scheduled day off, he shall be allowed equal time off at such time as may be approved by [his superior] under whom he serves, or in the alternative, shall be paid at a rate not less than one and one-half times his regular rate of pay."[10] The question raised by the appellants is whether holiday pay must be paid in addition to the regular wages earned on that holiday.

The parties do not dispute the holiday pay calculation until January 1, 1979, when the city adopted a new method of compensating the police officers for holiday pay. Under this system, a police officer who worked on a legal holiday received eight hours of pay at his regular rate of pay in his regular biweekly check. In December of each year, this officer would receive in a supplemental check four hours of pay at the regular rate of pay for each eight hours worked on a legal holiday.[11] A police officer who did not work on a legal holiday because it fell on his regular scheduled day off received the same compensation as a police officer who worked. Thus, under this new system, both the police officer who worked on a holiday and the officer who did not work on a holiday received eight hours of pay at one and one-half times their regular rate of pay.

We begin our analysis of W.Va.Code, 8–14–2a, and W.Va.Code, 8–15–10a, by acknowledging, as have other courts, that holiday pay statutes are designed to provide enhanced benefits to those employees

---

8. In 1982, the legislature did amend W.Va.Code, 2–2–1, to designate as a legal holiday "the fifteenth day of January, commonly called 'Martin Luther King's Birthday.'" In 1985, W.Va.Code, 2–2–1, was amended again and provides that "the third Monday of January, commonly called 'Martin Luther King's Birthday'" is a legal holiday.

9. As to the applicable provisions of W.Va.Code, 2–2–1, see note 5 *supra.*

10. The full texts of W.Va.Code, 8–14–2a, and W.Va.Code, 8–15–10a, are contained in note 3, *supra.*

11. The police officers have raised no objection on appeal as to this delay in being compensated for their holiday pay and the circuit court did not rule on this matter. Although we do not believe such a result is required by the statute, we do not address this issue.

who are required to work on a holiday when most employees are off. *See City of Fort Smith v. Brewer*, 255 Ark. 813, 502 S.W.2d 643 (1973); *Narragansett Food Services, Inc. v. Rhode Island Department of Labor*, 420 A.2d 805 (R.I.1980).

Both of the holiday pay statutes are designed to cover two classes of employees: first, the police officer or firefighter who is required to work on a legal holiday; second, the police officer or firefighter who has his regular scheduled day off fall on a legal holiday. The statutes also give the municipalities two options with regard to the enhanced benefit. Municipalities can either give the police officer or firefighter equal time off or they can pay the police officer or firefighter "not less than one and one-half times his regular rate of pay."

Neither of these holiday pay statutes states that holiday pay must be paid *in addition* to the regular wages earned on that holiday. In examining holiday pay statutes in other jurisdictions, we have found several that explicitly state that holiday pay must be paid in addition to the regular wages earned on that holiday. *See, e.g.*, Ark.Stat.Ann. § 19–1721 (1985); Cal.Educ.Code § 45203 (West 1985); La. Rev.Stat.Ann. 33:1999 (West 1968).

■ The compensatory language in our two holiday pay statutes requires payment at "not less than one and one-half times the regular rate of pay." We believe this language is clear and, therefore, apply our traditional rule expressed in Syllabus Point 2 of *State ex rel. Underwood v. Silverstein*, 167 W.Va. 121, 278 S.E.2d 886 (1981):

> " 'Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.' Syllabus Point 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968)."

We conclude under W.Va.Code, 8–14–2a, and W.Va.Code, 8–15–10a, police officers and firefighters must be paid one and one-half times their regular rate of pay when they are required to work on a legal holiday or when such holiday falls on their regular scheduled day off, provided they are not accorded equal time off. The circuit court found that the city complied with this method of compensating its police officers and we affirm this finding.

■ A similar analysis can be applied to the method used by the city to compensate its firefighters for holiday pay. Originally, the city gave its firefighters equal time off for legal holidays, as provided in W.Va. Code, 8–15–10a, rather than additional compensation. Although on appeal the firefighters contend the circuit court erred in its ruling on the question of whether the firefighters had been given adequate time off, we conclude the circuit court ruled correctly. Essentially, the circuit court ruled that if any firefighter could establish as a matter of fact that he had not been granted sufficient time off during the time period in question, then that firefighter would be entitled to additional time off. We believe the circuit court's resolution of this issue was appropriate since it did accord relief if specific facts could be shown to warrant it.

Beginning January 1, 1980, the city changed its method of compensating firefighters for holidays. Instead of receiving additional time off, a firefighter who worked on a legal holiday received one and one-half times his regular rate of pay for the number of hours worked. A firefighter who did not work on a legal holiday because it fell on his regular scheduled day off received one and one-half times his regular rate of pay for sixteen hours. This sixteen-hour figure represented the maximum number of hours a firefighter could work in a shift on a legal holiday under the firefighters' work schedule.

The logic we used in analyzing holiday pay for the police officers is also applicable to the firefighters under W.Va.Code, 8–15–10a, regarding whether holiday pay must be paid in addition to regular wages earned on that legal holiday. As we have earlier stated, both W.Va.Code, 8–14–2a, and W.Va.Code, 8–15–10a, are similarly worded. Therefore, we affirm the circuit court's ruling that the city's method of compensating its firefighters for holiday pay at one and one-half times their regular

rate of pay was acceptable under W.Va. Code, 8–15–10a.[12]

■ However, we disagree with the circuit court's ruling on how holiday pay must be computed where overtime compensation is also earned on that holiday. After January 1, 1980, the city only paid a firefighter who worked overtime on a legal holiday one and one-half times his regular rate of pay which, in effect, meant that he received no additional compensation as holiday pay. In *Kucera v. City of Wheeling*, 153 W.Va. 531, 170 S.E.2d 217 (1969), we held that municipal firefighters are entitled to overtime compensation as provided in W.Va. Code, 21–5C–3(a), of our wage and hour law. This section currently mandates that when an employee works more than forty hours in a workweek, compensation for overtime shall be at one and one-half times the regular rate of pay.[13] Overtime pay is independent of holiday pay since the former is found in our general wage and hour law and the holiday pay provisions are special statutes relating to police officers and firefighters.

In *Narragansett Food Services*, the Rhode Island Supreme Court had the same problem of determining whether employees who worked overtime on a legal holiday were entitled, as to the overtime hours, to obtain not only the overtime pay provisions in its wage and hour law, but also the additional holiday pay premium which was one and one-half times the regular rate of pay. The court held that they were, stating:

"Section 28–12–4.1, enacted in 1974, clearly requires that employers pay employees time and one-half 'for all hours worked in excess of forty (40) hours per week.' Thus, when the Legislature

amended § 5–23–2 to provide that employers shall pay 'no less than time and a half' for Sunday and holiday employment, employees who worked overtime on Sundays and holidays were receiving premium compensation for those hours under § 28–12–4.1. The Legislature is presumed to know the state of existing relevant law when it enacts or amends a statute. *Flather v. Norberg*, R.I., 377 A.2d 225 (1977); *Bailey v. Huling*, R.I., 377 A.2d 220 (1977). We therefore must presume that the Legislature knew in 1976 when it amended § 5–23–2 that employees covered by § 28–12–4.1 already received premium compensation for overtime hours worked on Sundays and holidays." 420 A.2d at 808.

The Rhode Island Supreme Court concluded since both statutes were independent of each other, both must be given effect. It approved a calculation that applied the premium pay increment in each statute to the underlying regular rate of pay. Both statutes provided, in effect, for a premium rate of fifty percent of the regular rate of pay which when added together would be a premium of one hundred percent above the regular rate or double the regular rate of pay.

■ The reasoning of the Rhode Island Supreme Court is applicable to the present case. In 1976 when the legislature enacted both W.Va.Code, 8–14–2a, and W.Va.Code, 8–15–10a, setting extra holiday pay at one and one-half times the regular rate of pay, it must have been aware then that under W.Va.Code, 21–5C–3, which was enacted in 1966, our general wage and hour law required employees in an overtime status to be paid at one and one-half times their

12. We emphasize that the method adopted by the city is acceptable under W.Va.Code, 8–15–10a, but is not necessarily the method required of all municipalities under this statute. In particular, the sixteen-hour figure utilized by the city was based on its work schedule. Other municipalities obviously have different work schedules.

13. The applicable language of W.Va.Code, 21–5C–3(a), is:

"On and after the first day of July, one thousand nine hundred eighty, no employer shall employ any of his employees for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed."
During the time period of this litigation, W.Va. Code, 21–5C–3(a), had as a regular workweek forty-two hours.

regular rate of pay. We have consistently stated that:

> "The Legislature, when it enacts legislation, is presumed to know its prior enactments."

Syllabus Point 12, *Vest v. Cobb*, 138 W.Va. 660, 76 S.E.2d 885 (1953). *See also Marion v. Chandler*, 139 W.Va. 596, 81 S.E.2d 89 (1954); *State v. Hinkle*, 129 W.Va. 393, 41 S.E.2d 107 (1946).

If a firefighter works overtime on a legal holiday, then he is entitled to the premium compensation provided under the holiday pay statute and our wage and hour law. The premium payment of fifty percent of the regular rate of pay for overtime is independent of any enhanced benefit arising from the extra pay under W.Va.Code, 8–15–10a. The premium payment for holiday pay is also fifty percent of the regular rate of pay. When the two enhanced benefits are added together, they are one hundred percent of the regular rate of pay which when added to the regular rate doubles it.

■ Therefore, we conclude where a firefighter works overtime under W.Va. Code, 21–5C–3(a), and such overtime work is performed on a legal holiday under W.Va.Code, 8–15–10a, he is entitled to two times his regular rate of pay for the overtime hours worked.

### III.

### CALCULATION OF OVERTIME COMPENSATION FOR FIREFIGHTERS

■ The final issue involves the city's method of calculating overtime compensation for its firefighters. The firefighters and the city devote most of their arguments on the issue of how the regular rate of pay should be determined, but we think the parties misconceive the issue. The parties stipulated that the work schedule for the firefighters was established to average fifty-six hours per workweek over a six-week period. This average fifty-six-hour workweek was apparently adopted to com-

ply with W.Va.Code, 8–15–10, which prescribes that firefighters "shall not be required to remain on duty in excess of one hundred twelve hours during any fourteen consecutive days' period." [14]

Under the Fair Labor Standards Act, which is the federal counterpart to our wage and hour law, an employer may establish a workweek that exceeds the forty-hour workweek provided the employees are compensated at a rate of one and one-half times their regular rate of pay for each hour worked over forty hours. *Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942); *Yadav v. Coleman Oldsmobile, Inc.*, 538 F.2d 1206 (5th Cir.1976) (per curiam); *Brennan v. Valley Towing Co.*, 515 F.2d 100 (9th Cir.1975). We endorsed this concept in *Local 313, International Association of Firefighters v. City of Morgantown*, 174 W.Va. 122, 323 S.E.2d 604 (1984), where the Morgantown firefighters' work schedule was also found to average fifty-six hours per workweek. In Syllabus Point 1 of *Local 313*, we observed:

> "Our wage and hour law found in W.Va.Code, 21–5C–1, *et seq.*, is modeled to some extent on the federal minimum wage law contained in the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*"

The firefighters place much reliance on *Local 313* where we stated in Syllabus Point 2:

> "Under W.Va.Code, 21–5C–3(a), where employees are compensated on a lump sum basis, absent explicit proof of another mutually agreed upon rate of pay, a court must infer that the regular rate actually paid was that obtained by dividing the weekly wage paid by the number of hours actually worked."

Our decision in *Local 313* was issued after the circuit court in the present case had made its final decision. However, the circuit court anticipated our decision in *Local 313* and held a hearing to determine whether or not the firefighters had agreed with the city's method for calculating the regular rate of pay. After this hearing, the circuit court concluded essentially the

---

**14.** For the full text of W.Va.Code, 8–15–10, see note 16.

firefighters had agreed to the city's method of calculating the regular rate of pay and as a result could not subsequently challenge it.

The problem in *Local 313* was evident in the city's pay schedules for firefighters which listed each firefighters' salary on an annual, monthly, biweekly, and hourly basis. The city of Morgantown contended the annual salary included a firefighter's regular and overtime pay.

However, it was apparent from the pay schedules that the amount of the annual salaries was equal to the hourly rate of pay multiplied by the basic forty-hour workweek over fifty-two weeks and included no compensation for overtime. Since the Morgantown firefighters worked an average fifty-six-hour workweek, the annual salary did not reflect any compensation for the sixteen hours of overtime worked each week. Consequently, the only way to determine an hourly rate which would accommodate the actual overtime compensation without increasing the stated annual salary would be to make retrospective calculations based on what amounted to hypothetical regular hourly rates. We rejected the city of Morgantown's attempt to perform this hypothetical calculation based on federal cases construing the Fair Labor Standards Act, which we found to be similar to our wage and hour law in this area, and concluded:

"This type of post hoc or hypothetical and retrospective computation of a wage rate structure is foreclosed under federal cases. *Marshall v. Chala Enterprises, Inc.,* [645 F.2d 799 (9th Cir.1981)]; *Brennan v. Valley Towing Co., Inc.,* [515 F.2d 100 (9th Cir.1975)]. As stated in *Brennan,* '[i]t is the "actual fact" of a stepped-up rate for overtime which propogates the goals of the Act, and not the hypothetical retrospective construction of such a rate structure.' 515 F.2d at 106." 174 W.Va. at 127, 323 S.E.2d at 609.

In *Local 313,* we remanded the case for a determination of whether there was a mutual agreement between the city of Morgantown and its firefighters on the method of calculating the regular rate of pay.

In the present case, the wage schedules of the city do not present this problem.[15] When any of the listed hourly rates are multiplied by forty, representing the number of regular hours worked each week, and that product is added to one and one-half times the hourly rate multiplied by sixteen, representing the number of overtime hours worked each week, the total of these two figures annualized equals the designated annual salary. Because there is an amount set for the regular rate of pay that fully compensates each firefighter for his regular and overtime pay, the principle stated in Syllabus Point 3 of *Local 313* is not applicable:

"Where a fixed salary is paid and there is no express agreement or formula shown that sets an amount for regular pay and an overtime rate at least one and one-half times the regular rate, such an agreement or formula may not be inferred from hypothetical or retroactive calculations."

In this case, the circuit court found essentially that the parties had agreed on the pay formulation. We cannot say that this finding was plainly wrong. *See* Syllabus Point 2, *Powers v. Goodwin,* 174 W.Va. 287, 324 S.E.2d 701 (1984); Syllabus, *Jenkins v. Jones,* 169 W.Va. 409, 287 S.E.2d 521 (1982) (per curiam); Syllabus Point 8, *Sanders v. Roselawn Memorial Gardens,* 152 W.Va. 91, 159 S.E.2d 784 (1968).

We recognize that to a certain extent overtime for firefighters contains certain novel features that are not present in the ordinary case. This is because of their historical work cycle involving as it does lengthy periods of living at the firehouse. Legislative recognition of this fact is contained in W.Va.Code, 8–15–10, where there is a limitation placed on the number of hours firefighters can be required to work in a fourteen-day cycle. This statute also

**15.** We recognize that the city's pay schedules were not formally admitted, although they were filed and apparently considered by the trial court, which ruled they would be admitted upon a proper affidavit. Such affidavit was apparently not submitted.

provides that a paid firefighter "shall not remain on duty for more than twenty-four consecutive hours except in the case of an emergency." Finally, this statute states that members of such fire department "shall, by a majority vote, determine the schedule of hours to be worked in any twenty-four-hour period...." [16]

These provisions impact on a firefighter's work hours which in turn have an effect under the wage and hour law. It is apparent that a municipality with a paid fire department does not have an unfettered hand in setting the work schedule for its firefighters. Furthermore, it does appear, as the circuit court found, that the firefighters in the present case knew their regular hourly rate in advance as well as their total annual salary and their agreed average workweek, which averaged fifty-six hours of which sixteen hours were overtime. There also is no dispute that a firefighter also got compensated at one and one-half times his regular rate of pay for any additional overtime worked in excess of the sixteen hours of overtime worked each week. The listed annual salary simply reflected what a firefighter's annual salary would be without the addition of this extra overtime or holiday pay.

■ We conclude the provisions of our wage and hour law, W.Va.Code, 21–5C–3(a), will be satisifed where: (1) firefighters know in advance their regular hourly rate of pay, their average number of weekly hours to be worked each week, including a definite number of overtime hours over the forty-hour regular workweek, and their total annual salary; and (2) the forty regular hours when multiplied by the regular rate of pay is combined with the overtime hours scheduled to be worked each week compensated at one and one-half times the regular rate of pay and this sum when annualized equals the stated annual pay.[17] Finding this rule to have been met in the present case, we affirm the circuit court's decision on this issue.

■ We believe, however, that the circuit court erred in attempting to make a distinction between the regular rate of pay to be used for the sixteen hours of overtime ordinarily worked each week and the regular rate of pay for any additional overtime worked. W.Va.Code, 21–5C–3(a), mandates that the regular rate of pay must be used in determining the rate of pay for all overtime hours as it states that overtime pay is "at a rate not less than one and one-half times the regular rate at which he is employed." Furthermore, we find nothing in the wage and hour statute which draws any distinction as to overtime pay rates between regularly scheduled overtime and additional overtime.

Before closing this discussion, we are constrained to make several observations with regard to wage and hour cases where the employees are working irregular hours in their workweeks. The federal government has handled these problems by issuing detailed regulations authorized under the Fair Labor Standards Act, 29 U.S.C. §§ 201–19. These regulations have assisted the federal courts in applying the rather general language of the federal act. The United States Supreme Court commented on the efficacy of administrative regulations in the federal wage and hour law in *Skidmore v. Swift & Co.*, 323 U.S. 134, 139–40, 65 S.Ct. 161, 164, 89 L.Ed. 124, 129 (1944):

> "[T]he Administrator's policies are made in pursuance of official duty, based upon more specialized experience and broader

**16.** The provisions of W.Va.Code, 8–15–10, are:
"On and after the effective date of this section [July 1, 1971], the members of a paid fire department, without any reduction in their total annual compensation as such members, shall not be required to remain on duty in excess of one hundred twelve hours during any fourteen consecutive days' period. The members of any such paid fire department shall, by a majority vote, determine the schedule of hours to be worked in any twenty-four-hour period: Provided, that the members of any paid fire department shall not remain on duty for more than twenty-four consecutive hours except in case of an emergency requiring the service of more than one half of the department. The chief executive officer of the department is hereby empowered, authorized and directed to make the necessary assignments as provided in this section."

**17.** We stress that this is not the only acceptable pay formulation, but merely conforms to the particular facts of this case. The general principles enunciated in *Local 313* are also applicable.

investigations and information than is likely to come to a judge in a particular case. They do determine the policy which will guide applications for enforcement by injunction on behalf of the Government. . . .

"We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."

Under W.Va.Code, 21–5C–6, the commissioner of labor is authorized to promulgate rules and regulations "as shall be needful to give effect to the provisions of this article." Furthermore, the commissioner is empowered under W.Va.Code, 21–5C–8(b), to file legal actions on behalf of any employee whose wages have not been paid consistent with the wage and hour law, and with the consent of the employee, "shall have the power to settle and adjust any claim to the same extent as might the employee." The wage and hour director, as indicated in W.Va.Code, 21–5C–9, serves under the commissioner of labor and is authorized to "carry out such duties and functions as are necessary to effectuate the provisions of this article."

We have examined the regulations issued by the commissioner of labor. They are few in number and do not address many of the problems that are covered in the federal regulations. While there are distinctions between our wage and hour law and the federal counterpart, there are a number of similarities such that the federal regula-tions could be used as models for our State regulations.

Of particular interest is W.Va.Code, 21–5C–3(d)(3), which offers a procedure whereby an employer can obtain advance approval for its pay schedule by obtaining the commissioner's approval through a regulation.[18] At the present time, the commissioner has not promulgated any regulations pursuant to this provision. Under its counterpart in the Fair Labor Standards Act, 29 U.S.C. § 207(g)(3), the administrator has promulgated several regulations to enable employers to comply with this section in the federal act. See 29 C.F.R. §§ 548.1 through 548.502; see also 5 Employment Coordinator (RIA) ¶ C–16,325 through C–16,349 (1986); 2 Labor Law Reporter: Wage-Hours (CCH) ¶ 25,530.40 (1980).

The advantage of using this procedure is that cases such as the present one could be avoided by having the compensation arrangement approved in advance. The ultimate benefit is the avoidance of prolonged and expensive litigation in a matter where all too frequently there is an insufficient record to make a final determination of the case. See Local 313, International Association of Firefighters v. City of Morgantown, supra; Wells v. City of Fairmont, 173 W.Va. 519, 318 S.E.2d 463 (1984) (per curiam).

In summary, we affirm the circuit court's conclusion that the Governor's recommendations in memoranda of days off for State employees did not constitute legal holidays under W.Va.Code, 2–2–1, and, therefore, holiday pay was not required to

---

18. The applicable provisions of W.Va.Code, 21–5C–3(d)(3), state:

"(d) No employer shall be deemed to have violated subsection (a) by employing any employee for a workweek in excess of the maximum workweek applicable to such employee under such subsection if, pursuant to an agreement or understanding arrived at between the employer and the employee before performance of the work, the amount paid to the employee for the number of hours worked by him in such workweek in excess of the maximum workweek applicable to such employee under such subsection:

* * * * * *

"(3) Is computed at a rate not less than one and one-half times the rate established by such agreement or understanding as the basic rate to be used in computing overtime compensation thereunder: Provided, that the rate so established shall be authorized by regulation by the commissioner as being substantially equivalent to the average hourly earnings of the employee, exclusive of overtime premiums, in the particular work over a representative period of time; and if (i) the employee's average hourly earnings for the workweek exclusive of payments described in subdivisions (1) through (7) of subsection (b) are not less than the minimum hourly rate required by applicable law, and (ii) extra overtime compensation is properly computed and paid on other forms of additional pay required to be included in computing the regular rate."

be paid under W.Va.Code, 8–14–2a, and W.Va.Code, 8–15–10a, for those days. The circuit court was also correct in finding that for regular hours worked on a legal holiday, police officers and firefighters were entitled to be compensated at one and one-half times their regular rate of pay. However, we find the circuit court erred regarding the payment of holiday pay to firefighters who worked overtime. Where firefighters worked overtime on a legal holiday, they were entitled to two times their regular rate of pay for the overtime hours worked.

We also agree with the circuit court's finding that the city had established an agreed pay schedule for firefighters that properly compensated them for overtime. However, we disagree with the circuit court's holding that any additional overtime above the sixteen hours scheduled to be worked each week should be calculated at a different regular rate of pay. The same regular rate of pay must be used in both circumstances.

In view of the foregoing, we affirm the Circuit Court of Mercer County's rulings, in part, and reverse them, in part, and remand the case for further proceedings consistent with this opinion.

Affirmed, in part, Reversed, in part, and Remanded.