378 S.E.2d 293

**Deputy Sheriff Ernest K. LESTER, Deputy Sheriff Billie V. Reed, Deputy Sheriff C.D. Moses and all Other Deputy Sheriffs Similarly Situated**

v.

**Hon. J. Zane SUMMERFIELD, Judge; Jack Manning, Sheriff of Fayette Co.; and Deputy Sheriffs Alan Workman and James J. Smith.**

**No. 18632.**

Supreme Court of Appeals of West Virginia.

Feb. 17, 1989.

---

Stanley M. Hostler, James F. Wallington, Hostler & Segal, Charleston, for appellants.

MILLER, Justice:

W.Va.Code, 7–14–8, provides that a deputy sheriff who voluntarily terminates his employment may, within two years, apply for reappointment as a deputy. The issue here is the effect of such reappointment on a deputy's seniority for purposes of layoff under W.Va.Code, 7–14–17(d).

### I.

Respondent, Alan Workman, was first appointed as a Fayette County deputy sheriff on December 18, 1968. He voluntarily quit on July 15, 1981, to become chief of police in Montgomery, and was so employed for almost two years. On March 23, 1983, he requested to be reappointed as a deputy pursuant to W.Va.Code, 7–14–8. This request was approved by the deputy sheriff civil service commission on May 9, 1983. Deputy Workman's appointment date was noted on the sheriff's roster as May 15, 1983.

Respondent, James J. Smith, was a Fayette County deputy sheriff with over nineteen years of service. On February 2, 1988, he tendered his resignation to become a candidate for sheriff. Deputy Smith was defeated in the primary election and, on May 15, 1988, requested to be reappointed as a deputy. His request was approved by the commission and his appointment date was duly noted as June 16, 1988.

On July 1, 1988, the sheriff's office reduced its staff by nine deputies due to budget constraints. As required by W.Va. Code, 7–14–17(d), the deputies were laid off in inverse order of their appointment. By letter dated June 23, 1988, Deputies Workman and Smith were advised that they were to be laid off.

On June 28, 1988, Deputy Workman filed a petition for a writ of prohibition in Fayette County Circuit Court. He contended in the petition that he "applied for and was reinstated ... as a Fayette County [d]eputy [s]heriff, pursuant to the provisions of W.Va.Code, 7–14–8." He further contended that for purposes of layoff his date of appointment was December 18, 1968, his original date of hire, and that other less senior deputies must be laid off first.

The circuit court concluded that by virtue of his reappointment, Deputy Workman was restored to his previous seniority and that his attempted layoff was, therefore, unlawful. In its memorandum opinion, the court also noted that Deputy Smith was similarly situated and that the foregoing law was applicable to him as well. A writ of prohibition was issued on July 15, 1988, directed against the sheriff, to prevent the layoff of Deputies Workman and Smith.

Petitioners are members of a class of Fayette County deputy sheriffs who are subject to layoff if the court's order is made operative. These deputies assert that the order is in contravention of W.Va. Code, 7–14–8, and, therefore, in excess of the court's jurisdiction. They seek from this Court a writ to prohibit implementation of the order and to require the Fayette County sheriff to restore the most recent appointment dates of Deputies Workman and Smith. No one contends that prohibition is an improper remedy. *See Kennedy v. State*, 176 W.Va. 284, 342 S.E.2d 251

(1986); Syllabus Point 1, *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979).

## II.

W.Va.Code, 7–14–1, *et seq.*, sets out the civil service requirements for deputy sheriffs in counties with populations of 25,000 or more.[1] Because of their length, we summarize the appointment procedures as detailed in those statutes. Applications for an original appointment as a deputy are filed with the deputy sheriff civil service commission in the appropriate county. Every applicant must submit to a competitive examination administered by the commission. W.Va.Code, 7–14–8. If an applicant successfully completes the examination, his name is placed on the commission's "eligible list." Applicants must also be examined by two physicians and be certified to be physically fit. W.Va.Code, 7–14–9.

When a vacancy occurs, the commission forwards to the sheriff the names of the applicants on the "eligible list" who received the three highest scores on its examination. The sheriff must make the appointment from the list provided by the commission. W.Va.Code, 7–14–11.[2] The deputy so appointed is placed on probationary status for six months. If at the conclusion of the six-month probationary period the conduct of the deputy is deemed to be satisfactory, he receives a permanent appointment. W.Va.Code, 7–14–7.

At issue here is W.Va.Code, 7–14–8,[3] which provides a procedure for reappointment of a former deputy. The procedure, referred to as "reinstatement," may be invoked if the applicant: (1) was a deputy in the county, for a period of more than six months, within two years of the date of application for reappointment; (2) did not have charges of misconduct or misfeasance pending against him at the time of his departure; (3) resides in the county in which application is made; and (4) passes a medical examination. The decision whether to reappoint a former deputy is entirely discretionary, as the statute places "eligib[ility] for appointment by reinstatement in the discretion of the civil service commission[.]"

There are significant advantages that accrue to a former deputy who utilizes this procedure. For example, a deputy sheriff appointed by reinstatement need not submit to the commission's competitive examination.[4] Second, the appointment decision in such cases is made directly by the commission, and not by the sheriff. Finally, the reinstated deputy is not required to undergo a probationary period.

It appears that W.Va.Code, 7–14–8, reflects a legislative policy to encourage deputy sheriffs who terminate their employment to return to public service. The reason for this policy is manifest: a trained

1. Counties with populations of less than 25,000 may, at their option, place deputy sheriffs under civil service protection as provided in W.Va. Code, 7–14–19.

2. The sheriff does have the right to make objection to the commission's list if any of the individuals on the list are disqualified for the reasons contained in W.Va.Code, 7–14–10. If the commission sustains the objection, the affected individual may demand a hearing.

3. W.Va.Code, 7–14–8, provides in part:
   "[I]n the event any applicant formerly served as a deputy sheriff for a period of more than six months in the county to which he makes application, and resigned as a deputy sheriff at a time when there were no charges of misconduct or other misfeasance pending against him, within a period of two years next preceding the date of his application, and at the time of his application resides within the county in which he seeks appointment by

reinstatement, then such applicant shall be eligible for appointment by reinstatement in the discretion of the civil service commission, even though such applicant shall be over the age of forty-five years, provided he is not sixty-five years of age or over, and such applicant, providing his former term of service as a deputy sheriff so justifies, may be reappointed by reinstatement without a competitive examination, but such applicant shall undergo a medical examination; and if such applicant shall be so appointed by reinstatement as aforesaid, he shall be the lowest in rank in the sheriff's office next above the probationers of the office."

4. This also appears to be a discretionary decision since the statutory language is that the deputy "may be reappointed by reinstatement without a competitive examination, but ... shall undergo a medical examination[.]" W.Va.Code, 7–14–8.

deputy with prior field experience is a valuable asset to the county and additional costs in training him need not be incurred. W.Va.Code, 7–14–8, offers an incentive to apply for reinstatement by substantially easing the application process.

However, W.Va.Code, 7–14–8, does not operate to fully restore a deputy to his former status. A deputy who is appointed by reinstatement does not receive his prior rank, but rather "the lowest ... rank in the sheriff's office above the probationers of the office." [5] Furthermore, this section does not speak to the deputy's past service, but provides only for appointment by reinstatement. Even as to an original appointment, the statute does not offer any explanation of the importance or meaning of the date of appointment. W.Va.Code, 7–14–11.

It is only when reference is made to the layoff provisions in W.Va.Code, 7–14–17(d), that the purpose of the date of appointment is clearly revealed. This statute directs that layoffs are to be "accomplished by suspending the number desired in the inverse order of their appointment[.]" [6] We see nothing in this section, nor in the reinstatement section, that suggests the legislature intended to allow reinstated deputies to utilize their original date of appointment.

Clearly, such a right would be inconsistent with W.Va.Code, 7–14–8, which expressly requires those appointed by reinstatement to be placed "lowest in rank in the sheriff's office next above the probationers of the office." If reinstated deputies could utilize their original date of appointment, they would then have significant advantages over other deputies in layoffs and in promotions, where emphasis is placed on the deputy's "previous service and experience." W.Va.Code, 7–14–13.

Furthermore, other related statutes clearly indicate that the legislature knew how to preserve prior service credit, as evidenced by the provisions applicable to chief deputy sheriffs set out in W.Va.Code, 7–14–13:

> "[A]ny person occupying the office of chief deputy in any such county on the effective date of this article, or thereafter appointed to such office, shall, except as hereinafter provided in this section, be and shall continue to be entitled to all of the rights and benefits of the provisions of this article, except that he may be removed from such office of chief deputy without cause *and the time spent by such person in the office of such chief deputy shall be added to the time, if any, served by such person during the entire time he was a deputy sheriff of such county prior to his appointment as chief deputy* [.]" (Emphasis added).

It is apparent that if the legislature intended to confer a further advantage to a reinstated deputy by giving him service credit back to his original date of appointment, it could have followed the language of W.Va.Code, 7–14–13. We have customarily held that the legislature is presumed to know the contents of related statutes. *See* Syllabus Point 5, *Pullano v. City of Bluefield,* 176 W.Va. 198, 342 S.E.2d 164 (1986); *Vest v. Cobb,* 138 W.Va. 660, 76 S.E.2d 885 (1953).

Finally, we refuse to read such an important right into these statutes absent some

---

5. Similar language is found in the civil service procedures contained in W.Va.Code, 7–14B–8 (correctional officers); W.Va.Code, 8–14–12 (municipal police officers); and W.Va.Code, 8–15–18 (municipal firemen).

6. The entire text of W.Va.Code, 7–14–17(d), is: "If for reasons of economy or other reasons it shall, on and after the effective date [July 1, 1971] of this article, be deemed necessary by any appointing sheriff to reduce the number of his deputies, he shall follow the procedure set forth in this subsection (d). The reduction in the numbers of the deputy sheriffs of the county shall be effected by suspending the last man or men, including probationers, who have been appointed as deputies. Such removal shall be accomplished by suspending the number desired in the inverse order of their appointment; Provided, that in the event the number of deputies shall again be increased in numbers to the strength existing prior to such reduction of deputies, the deputies suspended under the terms of this subsection (d) shall be reinstated in the inverse order of their suspension before any new appointments of deputy sheriffs in the county shall be made."

clear directive from the legislature. To do so would have the effect of rewriting these statutes. Courts should not legislate, but merely interpret the law where statutes are concerned.

Respondents rely on *Crockett v. Andrews,* 153 W.Va. 714, 172 S.E.2d 384 (1970), where this Court considered a regulation promulgated by a police civil service commission. It awarded five points, for purposes of promotion, "for each full year of service [an officer] has had with the department, up to 20 years." 153 W.Va. at 717, 172 S.E.2d at 386. The involved officer complained that he was only credited for years since his reinstatement in 1963 and not since his original date of hire in 1949. The difference between *Crockett* and the present case is obvious and reinforces our conclusion. In *Crockett,* there was clear and specific language governing the issue. Here, there is an absence of such language.

For the foregoing reasons, we conclude that W.Va.Code, 7–14–17(d), relating to the reduction in the number of deputy sheriffs, requires that such reduction be done "in the inverse order of their appointment." The term "appointment" cannot be read to mean the date of original appointment for those deputy sheriffs who have been appointed by reinstatement under W.Va.Code, 7–14–8.

We find the circuit court exceeded its powers in ordering the sheriff to keep respondents on the force. Consequently, a writ of prohibition is issued prohibiting the circuit court from enforcing its order of July 15, 1988.

Writ issued.

McGRAW, J., participated and concurred in this decision, but departed from the Court prior to the preparation of the opinion.

WORKMAN, J., did not participate in the consideration or decision of this case.